## CARMACK and others *against* The Commonwealth, for the use of BOGGS and others.

*Pittsburg,
Wednesday,
Sept. 9.*

IN ERROR.

The sureties of a sheriff are liable in damages for the sheriff's trespass, in seizing and selling the goods of *B,* under an execution against *A;* but a judgment in trover against the sheriff alone, for the same cause, is not binding upon the question of damages in a suit against the sheriff and sureties.

A judgment in trover against the sheriff, is neither an extinguishment of his official security, nor a bar to a suit against his sureties. It is but one of several remedies, which the injured party may use successively, until he obtains satisfaction.

THIS was a case stated in the Common Pleas of *Erie* county, with liberty to either party to bring a writ of error; and the judgment of that court having been rendered against the defendants below, they brought this writ of error.

The material circumstances set forth in the case were these: In *June* 1805, a suit was brought in the Common Pleas of *Erie* against one *Thomas Wilson*, upon which judgment was obtained, and a *fi. fa.* issued to *December* 1806. This execution was levied upon one hundred barrels of salt as the property of *Wilson*, which were claimed by *Boggs* and others as their property, and notice of their claim given to *Carmack* the sheriff, who nevertheless proceeded to sell the salt, and paid the proceeds to the plaintiff in the execution. In *January* 1808, *Boggs* and the other proprietors of the salt, brought trover against *Carmack*, and recovered a

verdict for 752 dollars 80 cents damages, and six cents costs, upon which final judgment was entered. This suit was then brought, which was a *scire facias* against the sheriff and his sureties, on his official recognisance, to recover from them the amount of the judgment in *trover*.

The question submitted to the court was, whether *Patrick M'Kee* and another, (two of the sureties who were served with process) were liable for the same, in consequence of the bond and recognisance entered into by them as sureties for the said *Jacob Carmack*, in pursuance of the act of assembly of the 28th of *March* 1803.

If the court should be of opinion that they were so liable, then judgment to be entered against all the defendants, for the said sum of 752 dollars 80 cents, with interest and costs; but if the court should be of opinion that the sureties were not so liable, then judgment to be entered against *Carmack* only, for the above amount; or for the defendants generally, if the court should be of opinion that judgment could not be legally entered against *Carmack* in this action.

By the act of the 28th of *March* 1803, 4 *Smith's Laws* 45, it is enacted that the sheriff, before he shall be commissioned or execute any of the duties of his office, shall enter into a recognisance, and become bound in an obligation with at least two sufficient sureties. The form prescribed for the recognisance is as follows: " You do acknowledge, &c. &c., " upon condition that if you (the sheriff) shall and do with- " out delay, and according to law, well and truly serve and " execute, all writs and process of the commonwealth of " *Pennsylvania* to you directed, and shall and do from time " to time, upon request to you for that purpose made, well " and truly pay or cause to be paid to the several suitors " and parties interested in the execution of such writs or " process, their lawful attornies &c., all and every sum and " sums of money to them respectively belonging which shall " come to your hands, and shall and do from time to time, " and at all times during your continuance in the office of " the sheriff of the county of ———, *well and faithfully exe- " cute and perform all and singular the trusts and duties to " the said office lawfully appertaining*, then this recogni- " sance to be void, otherwise &c." The condition of the bond is in similar terms. The act further provides that

whenever " any individual shall be aggrieved by the *mis-* " *conduct* of any sheriff, it shall be lawful, as often as the " case may require, to institute actions of debt or of *scire* " *facias* upon such recognisance, against such sheriff and his " sureties, and if upon such suits it shall be proved what " damage hath been sustained, and a verdict and judgment " shall be thereupon given, execution shall issue for so " much &c."

*Foster* for the plaintiffs in error.

1. The sureties are not answerable for the trespass of the sheriff. The preamble of the act of 1803 recites, that the security should be proportioned to the trusts confided to the sheriff. There is no trust confided to him that he shall not commit a trespass. Suppose in execution of his office, he should commit an assault and battery, will it be said his sureties are liable? The persons entitled to remedy on the recognisance, are the plaintiff who puts the writ in his hands, and the defendant on whom it is served. The duties which he has to perform are active, not negative. If he commits a trespass, it is not in the execution of his office; his office does not justify him; he stands as an individual, and as an individual must answer. Vindictive damages are often recovered against him in trespass; it would be enormous to make sureties liable to this extent.

2. After the recovery in trover the sureties are not liable. The remedy upon the recognisance is extinguished, or barred by the election of another remedy. If the grantee of rent recovers in an action of covenant for non-payment, it is a bar to an action of debt for the same rent. 1 *Roll. Abr.* 353., 4 *Bac.* 115. So a recovery in assumpsit is a bar to debt for the same cause of action. *Ashbrooke* v. *Snape* (a), *Lee* v. *Mynne* (b). No suit on the recognisance can be supported against the sheriff, and therefore not against him and his sureties. Judgment against one on a joint and several obligation, is no plea to an action against the other, but it is a good plea to an action against both.

3. The recovery in trover was not conclusive against the sureties. They had no notice; and it is against natural justice, to condemn them unheard.

(a) *Cro. Eliz.* 240.          (b) *Cro. Jac.* 110., *Yelv.* 84. *S. C.*

*Baldwin* for defendants in error.

1. It is contrary to the duty of the citizen to resist the sheriff. If his goods are wrongfully taken, he can neither replevy them, nor obtain a suspension of the execution until the question of property is tried. 1 *State Laws* 795. *Insurance Company of Pennsylvania* v. *Ketland* (*a*). Miserable is his condition therefore, if he has not a remedy against the sheriff. But the act intended that wherever the sheriff was bound to answer, his sureties should answer for him. They are to answer for his *misconduct*, and for his not faithfully executing all the duties of his office. Is it possible to contend, that he faithfully executes his duty, when upon a writ against the goods of *A*, he takes the goods of *B?*

2. The judgment in the action of trover is no bar. The injured party has many remedies, and he is entitled to exhaust them all, until he obtains satisfaction. The case frequently occurs. Judgment on a bond is no bar to a *scire facias* upon the mortgage given to secure it. Judgment in debt for rent, is no bar to a distress for the same cause. *Transit in rem judicatam* is true only of the particular cause of action in suit.

3. Undoubtedly as against the sheriff, the judgment in trover is conclusive. But if conclusive against him, how can the others be distinguished in the case of a joint *scire facias?* It is an inconvenience to which they are exposed by their suretyship; but the principal being concluded, so must principal and surety be in a suit against them.

TILGHMAN C. J. This is an action against the sheriff and his securities on his official recognisance, for an injury sustained by his levying on the property of the plaintiffs, by virtue of an execution for *John M'Koy* v. *James Wilson*, after having received notice that the goods belonged to the plaintiffs, and not to *J. Wilson.* Previous to the commencement of this suit, the plaintiffs had brought an action of trover against the sheriff, in which they obtained a verdict and judgment, but received no satisfaction. There are two questions for the decision of this Court. 1. Whether the plaintiffs were entitled to recover in the present action to

1812.

CARMACK
*v.*
COMMON-
WEALTH.

(*a*) 1 *Binn.* 499.

1812.

CARMACK
v.
COMMON-
WEALTH.

the amount of the damages recovered in the action of trover? 2. Whether the securities of the sheriff are answerable for an injury of this kind?

1. I consider this action as totally distinct from, and unconnected with the action of trover against the sheriff, with which the securities had nothing to do, nor does it appear that they even had notice of it. The action of trover was not necessary as a foundation for this suit, because the act of assembly by virtue of which the sheriff entered into a recognisance with security, enacts, that when any person is aggrieved by the conduct of the sheriff, he may institute an action of *scire facias* on the recognisance, and recover to the amount of the damages he shall prove that he has sustained. It is contended, however, that inasmuch as the sheriff was the defendant in the action of trover, he certainly is bound by the judgment in it, and therefore the other defendants in this *joint action* must likewise be bound. This is a very subtle attempt to cut off the securities from all possibility of being heard; but it is too unreasonable to be sanctioned by the law. It is much more just to say, that the plaintiffs having thought proper to join the sheriff in this action with other persons not parties to the action of trover, they have thereby relinquished the estoppel against the sheriff, because that estoppel cannot be insisted on without injustice to the other defendants. I am therefore of opinion, that the defendants were at liberty to make their defence in this suit, in the same manner as if the action of trover had never been brought.

2. Are the securities in the recognisance liable to this action? I will first consider a previous point made by the counsel for the plaintiffs in error, viz. that the judgment in the action of trover was an extinguishment of the recognisance, or rather a bar to this suit. I think it was neither the one nor the other. An extinguishment it cannot be, because it was not an action on the recognisance, and nothing but a judgment on the recognisance could operate as an extinguishment. Neither is it a bar, because no satisfaction has been received. A man may have two securities or two remedies for the same debt, and pursue both till satisfaction obtained. The common security for money lent, is by bond and mortgage; yet it was never supposed, that judgment

without satisfaction on the bond, was a bar to a suit on the mortgage. Having disposed of this previous question, it remains to be considered whether the securities are liable at all. That will depend on the true construction of the recognisance, which is in the following words. [The Chief Justice here read the recognisance]. Has the sheriff failed in a good and faithful performance and execution of the duty appertaining to his office? If he has, the plaintiff's case is within the recognisance. The words are very comprehensive, and it seems reasonable, that the securities should be liable for any illegal act of their principal, done in the execution of his office. Here was a writ put into the sheriff's hands, commanding him to levy on the goods of *Wilson.* By virtue of this writ he levied on the goods of *other persons,* after receiving notice, that they were not the goods of *Wilson.* It may be fairly said, that this was not a faithful performance of his office. The case falling within the words of the law, what will be the convenience or inconvenience of the construction one way or the other? It appears to have been the intention of the law, that the community should have security for redress against the sheriff in all cases of injury received by his official misconduct. And there is great reason for such security. Persons with small property are frequently elected sheriffs; nay, the smallness of their property is apt to excite compassion, and thus promote their election. Add to this, that the canvass is expensive, so that they frequently come to the office with little or no estate. This evil was felt, and therefore the act of assembly which we are now considering, increased the sum in which security was to be given, very considerably. The sheriff has great powers, and the public good requires that he should not be resisted in the execution of his office. What could the plaintiffs do in the present instance? The law armed the sheriff with the authority of seizing their property, and deprived them of the right of taking it out of his hands even by legal process; for the act of the 3d of *April,* 1779, 1 *St. Laws* 795, renders it unlawful to replevy the goods. Under such circumstances, nothing can be more reasonable than that the plaintiffs should have security for redress. Take away that security, and you lay the foundation for resistance

1812.

CARMACK
*v.*
COMMON-
WEALTH.

of the sheriff and disturbance of the public peace. I am therefore of opinion, that the securities are liable.

YEATES J. Two questions arise on this record. 1. Are the sureties of a sheriff liable in damages for his unlawful act in levying and selling the goods of a stranger, instead of the defendant's against whom the execution issued? 2. Are such sureties bound to pay the damages recovered against the sheriff by such stranger, in a suit brought against him alone?

1. The form of the recognisance to be given by a sheriff and his sureties, is prescribed by the third section of the act of the 28th of *March* 1803. The condition consists of three distinct branches. 1. That the sheriff shall well and truly execute all writs and process to him directed:—2. That he shall pay over all money which shall come to his hands, to the persons entitled to receive the same:—and 3d. That at all times during his continuance in office, he shall well and faithfully execute and perform all and singular the trusts and duties to the said office lawfully appertaining.

It has been contended, that the preamble to the law shews the intention of the legislature, to confine the benefit of the recognisance to those persons alone, who may be said to be in privity with the sheriff in the execution of his official duties;—that the two first branches respect the persons interested in the monies arising from the suits, and the last branch cannot be carried beyond the different defendants;—and that there is no trust reposed in him, that he will not commit a trespass, nor is such precaution within the scope of his official bond. I give a different construction to the preamble, the first part whereof runs thus:—" Whereas the " *public security* requires, that sheriffs and coroners should " give sureties proportioned to the trusts confided, for the " faithful execution of their official duties." The *public security* was the great object of the law; and though the parties to the suit would more generally be interested in the faithful execution of the duties of the sheriffalty, yet other persons might also be affected thereby. The words of the condition are large and extensive, and are confined to no denomination of persons. " He shall from time to time, and at " all times during his continuance in the office of sheriff, well

"and faithfully execute and perform all and singular the "trusts and duties to the said office lawfully appertaining." The fourth section contains expressions equally general. "Whenever the commonwealth, or *any individual* or *indi-*"*viduals*, shall be aggrieved by the misconduct of any sheriff "or coroner, it shall be lawful, as often as the case may re-"quire, to institute actions on such recognisances," &c. The office of a sheriff is exposed to great risks, in cases of escape, after every reasonable precaution has been used; and it is well known that from want of legal knowledge, and due diligence in the discharge of their duties, many sheriffs have terminated their career in insolvency. Shall such persons punish one man for the crime of another, arrest or detain in prison, under mesne or judicial process, a stranger instead of the real defendant, sell one man's goods on a *fieri facias* issued against another, and the injured parties be wholly remediless? Upon what grounds of sound policy could the law have drawn a line of discrimination between the litigant parties, and other inhabitants of the county, when the most injurious consequences might spring from the sheriff's illegal conduct to the latter, as well as to the former? The public security would not thus be provided for. The strong hold which the community have on a ministerial officer, is by subjecting his sureties to responsibility for his official misconduct. I am therefore of opinion, that the sureties are liable in damages for the unlawful conduct of the sheriff, in the present instance.

But secondly, whatever may be the liability of the sureties, it is not consistent with the principles of common justice, that they should be condemned unheard. It appears unnecessary to consider what would be the legal effect of their having received notice of the action of trover brought against the sheriff, and co-operating with him in his defence of that suit. No such fact is stated, or even pretended, in this case. They had an undoubted right to question the illegality of the act complained of, and to contest the damages consequent thereon. This is rendered more plain, if possible, by the positive terms of the fourth section of the act; if in actions of debt or *scire facias* upon such recognisances, or actions of debt upon such obligations, against such sheriff or coroner and their sureties, "*it shall be proved what*.

" *damage hath been sustained*, and a verdict and judgment " shall be thereupon given, execution shall issue," &c. The act therefore points out the mode in which damages are to be recovered from the sureties; and this not being complied with in the present instance, the consequence is, that the judgment of the Court of Common Pleas must be reversed, and a *venire facias de novo* be awarded.

BRACKENRIDGE J. By the act of the 23d of *March* 1803, the condition of the *obligation* to be entered into by the sheriff and his sureties, is precisely the same with that of the condition of the *recognisance;* and why both obligation and recognisance, I do not see, unless for the greater security of those interested, the proceedings on the bond being against the person in the first instance, *which may be followed any where.* But be that as it may, it marks the solicitude of the legislature to secure to the citizens, a faithful execution of the duties of his office. Whether this security shall extend beyond a nonfeasance, and comprehend the doing what he was not bound to do, and ought not to have done, makes the first question in the case. As, for instance, where he is commanded by the writ to take the goods of *A,* and takes the goods of *B,* which is a trespass, are the sureties liable?

In giving a statute a strict *or a liberal construction,* what shall guide? It must be our idea of the policy of the act, in the extent to be given it. To say that the sureties shall be liable for the malfeasance of the sheriff, in the execution of his office, is extending the responsibility. But is it a matter of difficulty to procure persons to undertake this office, and to provide sureties, even under this responsibility? Until an inconvenience of this nature stands in the way, or it can be foreseen that it will inevitably follow, there can be nothing drawn from the argument *ab inconvenienti* of such a construction.

It is remarkable that no qualification of *property* has been thought necessary for the sheriff. This is confined to his sureties, with regard to whom great precaution has been taken. Their " sufficiency shall be submitted to and ap- " proved by the judgment of the Court of Common Pleas " of the proper county, or any two or more of them *for that*

"*purpose convened;* and no commission shall be afterwards "granted, before the governor shall have approved of the "sufficiency."

The sheriff may be an insolvent person; and in that case has not every *citizen* as well as *suitor* an interest in this security against his trespasses *under colour of authority.* If that be the case, and it seems reasonable, it will decide the first question as to the sureties being liable for his doing what he ought *not to have done*, as well as not doing what he *ought to have done.*

A second question will arise, whether, on the action against a sheriff, notice was not necessary to be given to the sureties in order to fix their responsibility, and to conclude them by the judgment both as to the fact of the trespass or delinquency, and the amount of the damages. Are not the sureties to be considered as identified with the sheriff in his official conduct, and to be supposed cognisant of what he does, so as to supersede the necessity of notice? It is a principle of law, that where *notice in the nature of the case is supposed to be in the possession of the party, farther is not necessary.* The sureties are to be considered the *keepers* of the sheriff, and bound to follow him up, and attend to his performance of his duty, as well as to hinder his transgressions. It is most for the convenience of the suitors and the people, that it be considered in this point of view, and I am willing so to consider it. *When sureties know the risque, they will attend to it.*

But shall the judgment against the sheriff be conclusive, or only *prima facie* evidence against the sureties? To consider it otherwise than conclusive, would be letting in the traverse of the fact *ab origine*, which would render it more advisable to have sued on the bond or recognisance in the first instance. But an action of trespass could not be brought on the bond, though in an action of debt on the penalty, a trespass or delinquency might be alleged as a breach of the condition *whereby action accrued.* But the law delights in simplicity. It would introduce much special pleading to get at the issue to be tried in this way; and it would be more convenient to ascertain the damages against the sheriff in the first instance, which, if not discharged by him, would justify the calling on his sureties as a collateral security in.

the last resort. To allow them an opportunity of going into the original merits in the action on the bond, or the *scire facias*, would involve all the inconveniences before mentioned of special pleading, and averment, to get at the issue; and unless put specially upon the record by a particular statement, *it could not be pleaded in bar of another action for the same trespass, or case.* It is the most natural and simple proceeding, and most convenient for all concerned, to ascertain the fact and the damages, and to call upon the sureties only, on the sheriff having failed to satisfy. It is thus in the analogous proceeding against bail in court. The condition of the recognisance supposes that the debt or damages shall be ascertained, which they are to pay on not surrendering the principal. It cannot escape our consideration, that it is the duty of the sheriff, where the property of goods levied on is contested, to take a bond of indemnity from him at whose suit he levies, which will be for the benefit of the sureties.

Need I observe on what was thrown out in the argument, that by the judgment the property is vested in the defendant in the judgment, and the cause of action merged? *The judgment is no satisfaction;* it is but the evidence of the satisfaction which the law says ought to be made.

On these general grounds I am of opinion, that judgment be entered against all the defendants for 752 dollars 80 cents, with interest and costs of the original action, and the present.

Judgment reversed, and <em>venire de novo.</em>