The opinion of the court was delivered by
Huston, J.
The defendant in error, who was plaintiff below, had brought a suit in the year 1818, before-Martin,Esq., against Andrew Row, on which he obtained judgment, and on the 30th of September, ISIS, issued execution, which was put into the hands of Joseph Richardson, constable of the proper township. The money not being paid, Strickland had á scire facias issued against Richardson for neglect of duty; and on trial before thejustice obtained judgment against him on. the 21st of September, Í821, for thirty-five dollars and forty-one cents, and one dollar and six cents costs. Execution issued thereon, and Richardson was arrested, having no goods or lands was imprisoned, and soon after discharged under the laws for relief of insolvent debtors.
Richardson,-when appointed constable, had given bail, and Masser, Gobin, Painter and Haas, were the hail. Strickland then, under the act of assembly, proceeded by scire facias against them; ihe cause was carried to the Common. Pleas by appeal. At the trial in court, the plaintiff offered in evidence the record of thejustice, of the trial before him, against the constable, the execution and ar *355 rest, aud discharge as an insolvent debtor. This was objected to, but admitted, and exception taken. This exception has not been insisted on in this court.; it is an instance of the practicé, too common in some parts of this state, of delaying the cause, and encumbering the record with a bill of exception to every particle of evidence given on each side. The evidence was not only proper, but strictly legal in its nature, and necessary in the cause, and expressly required and directed by the act of assembly hereafter cited.
The defendants then offered to go into evidence to prove, that in fact, the constable, Richardson, whose bail they were, had not been guilty of any neglect or misconduct, but had proceeded strictly according to the directions of Strickland, the plaintiff. This testimony, on objection to it, was overruled by the court; “We will not,” say the court, (i inquire into the validity of the judgment before the justice against the constable, who might have taken his appeal or certiorari to that judgment. The judgment we consider valid until legally reversed.” '
The defendants then gave no testimony, and the court told the jury: “ We are of opinion the plaintiff is entitled to recover the amount of his judgment against the constable for neglect of duty, against the defendants, his bail; the judgment against the con* stable remaining unappealed from and unreversed.” The rejection of this evidence, and the opinion as to the effect of the judgment against the constable, in this cause, were the errors relied on here,
I shall consider the matter as it would be, independent of our act of, assembly, and as it is under the act. There are many cases in our books relating to the question, in what cases a judgment shall be binding on those not parties to it on the record; and to what ex* tent, and in what respects it shall be binding; and it would require some time, and not a little reflection, to bring them all within any rule or rules.
I shall not go into the general question, or pretend to cite or reconcile all the cases. Perhaps we do not find in the books any cases where the situation of the parties is precisely the same with that of sureties for officers under our acts of assembly; and there is also some difference in the nature and extent of the liability to which the bail of different officers are subjected; and also some difference in the remedy, the form of action, and the proof which may, or must, be adduced-to obtain redress for those aggrieved.
These bonds have been likened to covenants of warranty, and cases are cited to show, where the record of the eviction of the per* son warranted is evidence, and how it is evidence against the warrantor, who had not had notice, or who has notice of the suit, and been called on to defend it. In most cases it is necessary to prove an eviction, in order to support a suit on the warranty, and in such cases the record of eviction is always evidence, and evi* dence of the utmost importance. For the purpose of proving the fact, that, the person has been evicted, it is always evidence: hptv *356 far any additional efficacy is given to it, by proof of notice to the warrantor, or in what cases, or whether in.any case, except where obtained per fraudem, it is liable to be questioned, I shall not stop to examine.
These bonds have also been compared to bonds of indemnity, to which, perhaps, they have a nearer resemblance. In these there is no need, except, perhaps, for the purpose of recovering the costs and expenses of the suit against the person indemnified, to give notice. The record of a suit, and verdict, and judgment, against the person indemnified, is evidence both of the fact of damage and the extent of it, in a suit on the bond of indemnity, whether notice was given and the party called on to defend it or not. 1 Sdund. 116, and notes. Those who have undertaken to save a man harmless, are considered as bound to take notice of any suit against him, or perhaps, as contracting to take notice, or as contracting expressly to save harmless, whether they have notice or not; and, as agreeing to trust to the person indemnified the management of the defence, if suit is brought against him. A bond nearly of this nature was considered similar to a bond of indemnity in 6 Johns. 158, where it is intimated, that the doctrine of res enter alias acta, does not apply to the case of principal and surety. In that case, however, notice had been given, and the'decision was, that the judgment was conclusive that the plaintiff had been damnified, and of the extent of damages. The matter was considered again, 7 Johns. 168. In that case also, notice had been given of the suit against the sheriff^ and the defendant had co-operated in the defence, and the decision was held conclusive of the damages and of the amount thereof.' I apprehend, however, from the reasoning of Chief Justice Kent, page 171, that the decision must have been the same if no notice of the former suit had been given to the defendants in the cause trying. His case did not call for an opinion on this point, but the principle cited above from Saunders, 116, and the ease 6 Johns. 158, and the case in 7 Johns.', all led to the conclusion, that either from the relation and engagements of the parties, or from privity, the judgment against the officer would, unless obtained by fraud, have been conclusive of the officer’s liability, and of the extent of it.
These’official bonds are always joint and several. If the officer is sued firstj and a judgment obtained against him, and on failure of obtaining satisfaction, suits are brought against the sureties, I apprehend, judgment could not be obtained for a larger sum against them than had been recovered against the officer. The verdict and judgment against him might be used by them to limit the extent of the plaintiff’s claim; if it could not, the case of sureties would be alarming. The plaintiff’s demand, as shown by his execution, may be large. The sheriff alone can show how much ofthe defendant’s goods he found; whether those goods were in whole or in part subject to claims for rent, or to prior levies on other executions, in the hands of the same or a different officer. If any money *357 were paid the plaintiff, this, and the evidence of it, must be peí culiarly within the knowledge of the sheriff. A judgment against him for a small sum must then protect his sureties from paying a much larger, and if the judgment is evidence to protect them, it must he evidence against them; not conclusive in all respects, for they may plead non est factum to the bond, a release, the statute of limitations, &c. &c., but conclusive either for or against them of the fact, that the officer has not performed his duty, and of the damage for which he and his bail are liable. I am aware, that the case of Camack and others v. The Commonwealth, 5, Binn. 184, may be cited as containing a contrary opinion, and I know that the decision in this case lay over on account of that. But without going into a minute investigation of that case, or showing in what respects it differs from this, I may say, the opinion and reasoning above may be left for consideration, when a case on a sheriff’s bond occurs. This is on a bond against a constable’s sureties, and we decide this case on the-law as applying to such bond.
By the 29th section of the act of the 20th of March, 1810, it is provided, that when a constable .elect.is not possessed, of a freehold estate, clear of all encumbrances, worth one thousand dollars, “.he shall, before' being appointed, be bound in an obligation to that amount, with at least one sufficient security, to be taken, &c., for the just and faithful discharge of said office; and such obligatioq shall be held in trust for the use and benefit of all persons who may sustain injury from him in his official capacity, by reason of neglect of duty, and for like purposes and uses as sheriffs’ bonds are usually given.”
The proceedings for redress by the" party aggrieved, are very different from those directed on the sheriff’s hond. By section 19ths it is provided, that “any constable who has, or may hereafter give security agreeably to law, for the faithful performance of the duties of his office, and afterwards, on neglecting or refusing to perform such duties, shall have judgment rendered against him, for such neglect or refusal, and on being prosecuted for the recovery of such judgment, becomes insolvent, abandons his country, or from any other reason it bécomes impracticable to recover such judgment from such constable, or when a constable makes default, and abandons his country before judgment had against him, the justice before whom such judgment or judgments stand unpaid, are hereby authorized to issue á scire facias, and to proceed against such bail, for the recovery of judgments had as. aforesaid, in the manner constables are now suable, saving only the right of appeal, to such; bail.” Now, the bail of a sheriff may be sued in the same writ with him, or separately, and judgment and recovery against them, .or one of them, before any judgmeñt against the sheriff. The bail of a constable are not suable, unless where he has absconded, until , suit has been brought against the constable, and judgment obtained, and he is pursued to insolvency; and then not suable before-the jus *358 tice? though it has been held they may be in court, by action of debt, but by scire facias on the judgment already obtained before the same justice against the constable. It is against all principle and all precedent, to permit a party to plead to a scire facias on a judgment, what had been, or might have been pleaded to the original judgment. When these men entered into this bond, they were bound to know the extent of their liability and the remedies against them: They have entered into it — have incurred the risk, and must submit to the consequence. Where the law is positive, it is in vain to talk of. hardships. But I see none. This construction is more in favour of bail generally, than that contended for. If the judgment against the constable is erroneous or unjust, an appeal can be entered.- The bail are not strangers to such judgment; they are bound for all the official conduct of their principal, and bound to attend to proceedings against him by their bond, and by the law; and if they were not bound by the judgment against the constable, neither would the plaintiff be; and after the constable, who alone knew of the defence, had absconded, the plaintiff might recover from them the whole amount of his debt, who had only recovered a small sum in a suit against the constable.
The judgment against the constable is, however, only conclusive of the mis.conduct of the constable and injury of the plaintiff; it is not, absolutely conclusive against the bail, they may plead any defence personal to themselves, or any thing to show, that at the time the constable was liable they were not. As nothing of this kind was offered, the judge was right as to the evidenoe, and right in his direction to the jury.
Gibson, C. J.
If the sureties are concluded by the judgment against the constable, it must be for reasons purely technical; for it assuredly will not advance the justice of the cause, to refuse them an opportunity to make their defence in this action, since they could not of right, and did not in fact, make defence to the scire facias against the constable.
In matters of private right, a judgment is evidence only .against parties and privies. The defendants were clearly not parties. A court will undoubtedly look beyond the record, and treat as parties, all who are found to have in fact acted a part, and this whether their interference were irregular'or not. Yet, except in particular cases, no one will be forced to become a party, indirectly, who could not be brought in directly; and even in the excepted cases, he must have had notice to defend. Here notice is not pretended; and Had it in fact been given, the sureties would not have been bound to respect it. The notice to defend is derived by analogy from the voucher to warranty, and came into use with the personal action of covenant, when it superseded both the voucher and the ancient warrantia chartse; and like the voucher, its object is a recovery, over against the warrantor, with whom none but the party against *359 whom the recovery has beep had, has to do. Such a notice, therefore, can be given, not by the plaintiff, but the party to be defended. Here the sureties were under no obligation to the constable, much less to the plaintiff, to defend against the scire facias. They were, therefore, not parties immediately or remotely; and it remains to be seen, whether they stand in such privity as to be affected.
Lord Coke enumerates several sort of privies; and, among the rest, privies in contract, (3 Rep. 23, 4 Rep. 123.) But a recovery operates by way of estoppel, and none are to be estopped except privies in blood, privies in estate, and privies in law. The best elementary writers lay down the rule in the same words. (1 Stark. Ev., part 1, 192, 1 Phil. Ev. 245.) Here privity of blood or estate is out of the question, and privity of law is spoken of as contra-distinguished from privity in deed; as wheré the law implies the relation without its being created by deed: for example, in escheat. (Jacob’s Dict. Tit. Privies.) But the relation between these parties, which, at most, is that of principal and surety, is created directly by deed; and if there be any privity between them, it is that of contract, which is not admitted to be sufficient, by any court or authority whatever. In Patton v.'Caldwell, (1 Dali. 419,) a special-verdict in another'action on the same policy, was held to be admissible only because all the underwriters had made the action their own by agreeing to be bound by the same verdict. This is in principle exactly our cáse.' The underwriters had separately covenanted for the happening of the same contingency: and in our case, the defendants and the constable had separately covenanted for the due execution of the constable’s office, just as they might covenant for the happening of any other distinct and independent fact. In other words, the constable and his sureties, like the several underwriters, were bound for the same thing, but by distinct obligations. How then shall the covenant of the surety, which is never to be stretched beyond the letter, be extended to the payment of whatever may be recovered from the principal ? It is, indeed, said by Pothier, whose authority is relied on in Kip v. Brigham, (6 Johns. 158,) that the case of principal and surety does not fall within the rule of res inter alias acta. And so, indeed, are the provisions of the French• or civil law, according to which the surety accedes to, and becomes bound immediately by the contractof the principal, the contract of the surety being merely an accessary of that of the principal, and the former taking the place of the latter for every purpose of responsibility, whether actual or contingent. (Traite des Obligations, part 2, c. 6, sec. 1.) But will any one say that such are the provisions of the common Jaw; according to which, the surety is bound by the terms of his own engagement, without regard to the stipulations of his principal.
The case of Camack v. The Commonwealth, (5 Binn. 184,) is directly in point. There, the principal and the sureties were sued on their bond jointly; and it was not necessary to show, that *360 the plaintiff had previously, done all in his power to obtain satisfaction of the principal:' these two are the only points of difference on which á distinction could possibly be attempted. But that the principal and sureties are sued together, certainly does not weaken the relation in which they stand by their contract. Then, that the act of assembly in cases like the present, requires the principal to have been first pursued, has the effect only Of making the recovery evidence against the sureties, not of the facts adjudicated, but of the requisitions of the law having been complied with, of which the record of the recovery is the. best, and consequently, the only com-, -petent evidence. Of this I shall speak more fully in noticing the 'exceptions to the rule which requires privity. These unessential grounds of difference 'bei.ng removed, Camack y. The Commonwealth, comes fully up to the point, and is decisive of the principle in the abstract, that the rule of res inter alias acta, is, in fact, applicable to the cáse of principal and surety. Notwithstanding a recovery against the principal, the sureties were let in to traverse the cause of action ah origine.
The cases which appear, to be exceptions, constitute in fact, a distinct class, and are regulated by principles peculiar to themselves. The rule which requires privity is, inapplicable to them, because, as it is expressed in Gratz v. Burr, (4 Wheat. 213,)the judgment is admitted not as binding the fight of the party against whom it is produced, but as a link in the title: in other words, as operating not by way.of estoppel in respect of any fact adjudicated, but as being itself an independent fact, and an ingredient in the cause of action, or case set up by him producing it. There can be no happier instance of the difference, between the cases of this class •and those of which I have spoken, than the case before us. By the act of assembly, recourse can be had to the sureties, only after every means of obtaining satisfaction from the principal has been exhausted; and the judgment is consequently evidence against his sureties 'to show, that he has been pursued. But because it is evidence in that respect, it by no. means follows that it.should be evidence of the facts adjudicated, so as to fix the sureties with the consequences 'of his delinquency. The common instance of a verdict against a master for the misconduct of his servant, is also apposite for the purpose of illustration. The misconduct of the servant, which must first of all be proved by evidence aliunde, makes him answerable for. all the mischief it may occasion. But the injury which the master has suffered, is not to be estimated by what might be supposed an adequate compensation of the party who suffered in' the first instance, but what the master has, in consequence, been compelled to pay. So that the verdict against the master is evidence against the servant to fix the quantum of the damages. The servant cannot object that less might have been recovered if he had been permitted to defend and cross-examine the witnesses. His misconduct reduced. the master to the necessity of defending himself in the best *361 way he could; and if, in consequence, a loss must be borne by one, it shall be by him whose act occasioned it. In that case, as in this, the amount of the loss actually suffered; is the measure of the damages. But how unlike are the two cases in every other respect? The damages recovered from the master necessarily constitute the actual injury which he lias suffered, and form the standard of his compensation; but the amount recovered from the constable, is not necessarily in exact accordance with the extent of the injury. But the case of the servant would furnish a satisfactory analogy in an action by the sureties against the constable; io which a recovery by the plaintiff from the sureties, would be decisive of the quantum, of the damages, and, provided notice had been given to the constable to defend, conclusive of the facts adjudicated. Thus, also, it is in actions on contracts of indemnity where the loss to be compensated has been produced by an adverse recovery; ás in the case of special bail who have undertaken to surrender, the' principal or pay the condemnation money; or in an action on a warranty, which is broken by the very fact of a. recovery on an adverse title. On this principle is Bender v. Fromberger, (4 Dall. 436,) Leather v. Poultney, (4 Binn. 336,) and the cases cited from the New York reports. Had the sureties, like special bail, covenanted to pay whatever should be recovered against the constable, the plaintiff would have made out his case by producing the judgment, which, under the terms of the contract, would have been conclusive. But. they covenanted only for the due performance of the constable’s office; and, it seems to me, they ought not to be precluded .by any thing which has passed between the plaintiff and the constable, to whom they gave no authority to bind them, from showing that their covenant has been performed.
Smith, J. did not hear the argument, and took no part.
Judgment affirmed.