# Watt *against* Riddle.

By the English law merchant, the acceptor of a foreign bill of exchange is not liable for re-exchange, or any charge but interest, according to the rate established at the place of payment; and the statute of Pennsylvania, which gives liquidated damages as a substitute, has regard only to drawers and endorsers.

ERROR to the district court of *Allegheny* county.

Watt, Burke & Co. against Riddle, Forsythe & Attlebury.

The parties stated a case by which it appeared that on the second of January 1837, Pinckard & Payne, merchants at Vicksburg, Mississippi, drew a bill of exchange on the defendants at Philadelphia, for 2000 dollars, payable at four months, to the order of

Thomas Ferguisson, who endorsed it to Steele & Hopkins, who endorsed it to the plaintiffs, who discounted it at the Vicksburg Commercial Railroad Bank. It was accepted, but protested for non-payment; and the plaintiffs, having received notice of protest, paid the principal, at the return of the bill, with eight per cent. interest and five per cent. damages, in conformity to the law of that state. The defendants subsequently reimbursed them the amount of the bill, with six per cent. interest, the rate established by the law of Pennsylvania; and the question was, whether they were liable for the damages and difference of interest. The court below gave judgment for the defendants, and on error brought, the point was submitted without argument.

*Biddle*, for the plaintiffs.
*Bradford*, for the defendants.

The opinion of the Court was delivered by

Gibson, C. J.—It is not a little remarkable that in so commercial a country as America, the point submitted has not been raised before; nor is it less so, that it was first decided in England so late as 1810, and with so little remark as to the principle of the decision, though a novel and an important one. It came up in Napier *v.* Schneider, 12 *East* 420, on a motion to direct that the master allow the expense of re-exchange on a judgment against the defendant as an acceptor; to which the court barely answered that it could not be done against one who had charged himself, by his acceptance, with no more than liability to pay according to the law of his country; and that if he do not, the holder has his remedy against the drawer—a conclusion certainly not drawn from the law merchant of that continent with which England had her earliest and closest relations. " It appears," says Pothier, " from our definition of the contract of acceptance, that its first and principal obligation is to pay the sum due on the face of the bill, at its maturity. Its secondary and accessary obligations consist in this, that, in default of payment at maturity, the acceptor becomes liable to pay the holder, along with the principal sum: 1. Interest on it from the day of protest, without regard to the time of demand; 2. Costs of protest, and incidental expenses of presentment, for which, as we have already said, the drawer also is bound; 3. Re-exchange, as the drawer is liable to pay it, to whose obligation the acceptor is taken to have become a party (*avoir accedé*), by his acceptance. Finally, he is bound, with the drawer, for the interest on those sums from the time they are demandable." *Traité du Contrat de Change, Premiere Partie*, ch. 6, art. 4, sect. 1. Now it was the want of this principle of accession, which, in the civil law, produces a unity of interest and obligation between parties that would otherwise be severally bound, which gave a different turn to the English law. It had not been doubted that the drawer is liable for re-exchange,

and other incidental expenses; and had the acceptor been bound by the drawer's contract, he would necessarily have been in his predicament. It was not without an object, therefore, that Lord Tenterden asked, as he did, in Dawson *v.* Morgan, 9 *Barn. & Cr.* 619, "What privity of contract is there between an endorser and an acceptor?" He might have added, "or between a drawer and an acceptor;" for an endorser stands towards the acceptor essentially as the drawer of a new bill. It had long been held that the engagement of an acceptor is substantially that of the maker of a promissory note; and though the conclusion of the court in Napier *v.* Schneider was an inevitable one, it serves to show how impossible it is to combine, without collision, parts of the machinery of different systems, however separately susceptible of harmonious action. In Masser *v.* Strickland, 17 *Serg. & Rawle* 354, we followed, injudiciously, I thought, the precedent of the supreme court of New-York, in Kipp *v.* Brigham, 6 *Johns.* 158, by applying this civil law principle of accession, to the collateral engagement of a surety, and concluding him, to the displacement of the principle of *res inter alios acta,* by a recovery against his principal. But though the common law is so interwoven with our institutions as to have become an instinct of our nature, yet as our ancestors are supposed to have brought with them only those parts of it which are fitted to our condition, I will not say that we might not, to avoid a particular mischief, adopt, in the particular, the law merchant of the continent, which has, I believe, been somewhere called a part of the law of nations. But it so happens that the rule of the English law is peculiarly adapted to the exigencies of our commerce. Bills between America and Europe, are used almost exclusively for remittance to the latter, and the presence of a foreign acceptor here, is rarely known; consequently, though bills between the different states have also a foreign character, it has been thought more convenient, if not more just, for the buyer to look to the seller at the place of the transaction, than to look to a party bound by the same obligation elsewhere. It is for this reason, perhaps, that our statutory substitute for re-exchange has regard exclusively to drawers and endorsers. The letter goes no further; and though we might, to avoid injustice, pronounce the case of an acceptor to stand on separate ground, yet the legislature, it would seem, intended to dispose of the subject as an entire one; and we are consequently of opinion that the whole doctrine of re-exchange is supplanted by it. The remaining point is settled by more than one decision in our own country, as well as by an admitted principle of general law, that the contract of acceptance is local; and that interest for a breach of it, is to be computed at the rate of the place where it was to have been performed.

　　Judgment affirmed.