## Commonwealth, to use, v. Reilly et al.

*John P. Boland,* for plaintiff.

*Byron, Longbottom, Pape & O'Brien,* for defendants.

MacNeille, J., February 18, 1932.—We are considering an affidavit of defense raising questions of law.

This is a suit by the use-plaintiff on a bond given by the surety company, defendant, for the other defendant, a notary public, pursuant to his appointment by the Governor.

The bond is in the sum of $10,000, running to the Commonwealth of Pennsylvania, and the suit is brought to recover the sum of $9000 for loss which plaintiff sustained because defendant notary subscribed and affixed his seal to a false acknowledgment of Vincent Morris on a mortgage executed to the plaintiff. The notary knew the signature of Morris to be a forgery.

The affidavit of defense raises the following questions of law:

1. The bond upon which suit is brought gives plaintiff no right of action.

2. The bond on which the suit is brought is by its terms confined to "the Commonwealth of Pennsylvania for the use thereof."

3. The act of assembly referred to in the bond gives a right of action against the notary only.

The third reason may be disposed of first, because an inspection of the bond shows that it refers to no special act of assembly, and it is admitted that there are several acts of assembly.

The first and second reasons raise one question, and they may be considered together.

On the subject of notaries' bonds, the earliest provision is in the Act of March 5, 1791, 3 Sm. L. 6, section 8, which provides that every notary shall subscribe an oath to faithfully perform the duties of his office and to support the Constitution of the Commonwealth; "and also shall give bond, himself in a sum not exceeding six hundred pounds, and two sureties in a sum not exceeding three hundred pounds, each, conditioned for the faithful performance of the duties of his office, the amount of the said bonds to be determined on by the governor, which obligation shall be recorded in the . . . . office for recording of deeds, within the respective counties where he may reside, and may be sued by any party or parties injured, in like manner, and with the like effect, as bonds given by sheriffs or coroners. . . ."

Under this act it has been decided that where a notary forged a signature the injured party may recover: Com. *v.* Collar, 15 Dist. R. 317 (1906).

The Act of April 14, 1840, P. L. 334, section 3, provides for a bond for delivery of the register on removal, etc., and says: "Hereafter every notary shall be subject to all the provisions of the act of assembly passed the tenth day of March, one thousand eight hundred and ten . . . and the supplement thereto, passed the twenty-fourth day of March, one thousand eight hundred and eighteen [each of these acts covers taxation and fiscal affairs]; and shall give bond with two sufficient sureties, to be approved by the Governor in such amount as may be determined by him, conditioned for the faithful payment to the State Treasurer of all taxes and moneys which he shall become liable to pay to the commonwealth under the above recited acts; and for the delivery of his register and all other public papers into the office of the recorder of deeds of the proper county, in case of his death, resignation, disqualification, or removal, . . . which bond and also his commission and oath of office shall be recorded, as other bonds required to be given by notaries, are directed to be recorded."

These acts provide for bonds differing from each other as to conditions.

It is also to be noted that the Act of 1791 permits the Governor to exact no more than six hundred pounds—which would not exceed $3000.

The Commonwealth should take two bonds—one with the obligation under the Act of 1791, and one under the Act of 1840—or it should take one bond covering both of the obligations or conditions. This has been done in the condition in the bond under discussion, which is:

"Now the condition of the above Obligation is such, That if the said Edward J. Reilly, appointed, and commissioned Notary Public as aforesaid,

shall and does well and truly, and faithfully in all things, execute and perform the duties of said office of Notary Public, according to the several Acts of Assembly relating thereto, and shall well and faithfully account for and pay over into the State Treasury all public money," etc.

We conclude then that the state could require a bond under the Act of 1791 and another under the Act of 1840, but in this case the state has taken one bond only, and in that bond it includes the condition of each of these acts. We think the state is within its rights in accepting such a bond.

Under the Act of 1840, the Governor can require a bond in any sum. Under the Act of 1791, he has no right to require more than six hundred pounds, but no question was raised by the surety as to the Governor's right to accept a bond in excess of six hundred pounds, nor is there any reason for believing the Governor exacted such greater sum. The surety and the notary voluntarily offered their bond with the condition of the Act of 1791 containing a penal sum greater than the Act of 1791 required. That act placed a limit on what the Governor might require, but if the notary and surety offered more than the act required, the Commonwealth could accept it.

To say that this bond does not cover the requirements of the Act of 1791 is equivalent to saying that no notary is properly bonded, and none is properly qualified.

This bond is sufficient under either or both of the acts herein discussed. The words contained in the bond are sufficient to permit any aggrieved person to bring suit thereunder as use-plaintiff. The bond itself is so worded as to be a contract for the breach of which third and aggrieved parties may bring suit.

The Act of 1791, in section eight, provides that the notary shall give bond conditioned for the faithful performance of his duties, and may be sued by any party or parties injured, in like manner and with like effect as on bonds given by sheriffs and coroners. This Act of 1791 was amended by the Act of June 26, 1895, P. L. 343, section 1, to provide that a surety company may act as surety in lieu of one or more sureties required under any law.

In Carmack v. Com., 5 Binn. 184, a sheriff and his sureties are held liable for official misconduct in an action on the bond at the suit of the party injured. The same is true in Smith v. Com., 59 Pa. 320, 326. The court said: "The right of Jane McGarvy to sue on the bond in the name of the Commonwealth and to add herself as a party aggrieved, seems to be clear." This was interpreting the Act of March 28, 1803, 4 Sm. L. 45, sections 1 to 4, and the amending Act of June 14, 1836, P. L. 638, section 6.

The Act of 1836 authorizes suit on:

"Every bond and obligation which shall be given to the commonwealth by any public officer, or by any person appointed under authority of law to execute any public trust . . . to secure the faithful execution of the respective offices, employment or trust, and for the use of all such persons . . . as may be affected by the official acts or neglect of such officer or person."

This disposes of the objections to the statement of claim as set forth in the affidavit of defense in the nature of a demurrer, and if this were all, we should adjudge that the statement of claim makes out a good cause of action.

However, it appears from an inspection of the statement of claim that the plaintiff has not set out adequately that it has sustained any loss. It says that the mortgage was forged, and in the sixth paragraph of the statement of claim it avers that the said check of $9000 to Vincent Morris was endorsed "Vincent Morris" and collected from the plaintiff's depositing bank, the Continental-Equitable Title and Trust Company, through the Corn Exchange

National Bank and the Guarantee Trust and Safe Deposit Company. This is the nearest the statement of claim comes to averring any loss. We think this is insufficient averment. For all we know, the plaintiff may be seeking to recover, or may have recovered, against some bank for paying on a forged endorsement; or, it may be that Vincent Morris is a responsible party, or that Vincent Morris may be in course of paying the $9000. These things are improbable, but there is no averment in the statement on which we can base any premise. Under these circumstances, the statement would not be self-sustaining, and although this objection was not raised by the defendant, we deem it our duty to take cognizance of it.

Therefore, this objection to the statement is sustained, with leave to plaintiff to amend.