# WINDSOR COUNTY.

## FEBRUARY TERM, 1837.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
    " STEPHEN ROYCE,
    " JACOB COLLAMER,   } *Assistant Justices.*
    " ISAAC F. REDFIELD,

## EBENEZER PIERCE *v.* LUTHER GILSON.

Windsor.
February,
1837.

Action of trover may be maintained by the maker of a note, which has been paid and left, by mistake, in the hands of the holder.

But such action cannot be maintained, when the fact of payment is denied by the holder.

Testimony may be given to shew that a violent quarrel existed between the party and a witness, introduced against him, without enquiring of the witness as to the quarrel.

This was an action of trover for the conversion of a note, which, the plaintiff alleged that he executed to the defendant, and subsequently paid, and left in the hands of the defendant, who refused to deliver it to the plaintiff, on request.

The defendant pleaded the general issue, and introduced testimony tending to prove that he executed the note in question, and that he afterwards paid the full amount due on it, to the defendant, and, by mistake, left the note in defendant's possession; that he afterwards called on the defendant for it, who declined to give it up; claiming that it was not paid, and threatened to commence a suit upon it. The plaintiff, also, introduced testi-

mony, tending to prove that the last sum of money, paid by him, and which completed the payment of the note, was not indorsed on the note, and that the name of the plaintiff was not erased from the note, nor in way obliterated therefrom.

The defendant insisted that the plaintiff, upon this evidence, was not entitled to go to the jury; that, if the evidence was believed, it was not sufficient in law to entitle him to recover, and moved the court for a nonsuit.

But the court overruled the motion, and decided that if the jury believed the testimony, the plaintiff had made such a case, as entitled him to recover.

The defendant then introduced testimony tending to contradict one of the witnesses, introduced on the part of the plaintiff, and the principal one, by whom the note in question was identified, as the one paid, and offered to prove that a violent quarrel existed between said witness and the defendant. But the court excluded the testimony, on the ground, that the question must first be put to the witness himself.

The defendant requested the court to charge the jury, that the testimony disclosed no act of the defendant, amounting to a conversion of the note. But the court declined so to charge the jury, but instructed them, that, if they believed that the note, in question, had been paid and left in the hands of the defendant, by mistake, and if they should find that the plaintiff did demand the note of the defendant, and the latter refused to give it up to the plaintiff, it was such evidence of conversion, as entitled the plaintiff to recover. The jury returned a verdict for the plaintiff.

The defendant excepted, and, also, moved in arrest of judgment, for the insufficiency of the declaration. This motion was overruled by the County Court, and the case came up to this court for revision.

*A. Tracy, for defendant.*

The County Court erred in excluding the testimony offered by defendant, to prove the existence of a violent quarrel between one of the plaintiff's witnesses and himself, on the ground that the question must first be put to the witness himself.

It is admitted that such is the rule where the attempt is to discredit a witness by proof that he has said that, which is inconsistent with his testimony on the stand.

But the cases are not analogous. In the case now under consideration, the inquiry is as to a collateral and independent fact,

and the party, making it, is bound by the answer, if put to the witness himself. In the other, it is strictly in point, as matter of cross examination, and hence the party, making it, is not concluded by the answer, but may still show the fact by other testimony.

It is believed that no authority can be found sustaining the decision of the county court. The authority of judge Swift is directly against it. Swift's evidence, 148.

It may perhaps be said, that, admitting there was error in this, the testimony excluded was not of a character sufficiently important to warrant a new trial. But the case shows the witness, sought to be discredited, to have been a material witness, and that he was contradicted by other testimony. And this court will not undertake to say how far the testimony excluded might, when added to the other testimony, have gone to convince the jury that his story was not to be believed. If the testimony was legal, the defendant had a right to have it weighed by the jury.

But the view the court may take of this question is of little importance in the present case, if the motion in arrest prevails, and we think it must, for the want of any sufficient cause of action set forth in the declaration.

That trover cannot be maintained for a note, which has been paid, and left in the hands of the payee, is believed to be well settled by the case of *Todd* v. *Crookshanks*, 3 Johns. Rep. 432.

The action of trover is founded on property, and cannot be sustained for that, which is utterly valueless, and which cannot be considered as property in any sense ; and such, by the plaintiff's own showing, was the character of the note sued for—mere waste paper.

It cannot be sustained for the purpose of creating a defence to an action, that may, or may not, thereafter be brought.

The present action was brought, not for the purpose of recovering five cents, or any other sum, but for the purpose of creating a record, which shall operate as a bar to any future action on the note.

Nominal damages, only, were or could be claimed, and it will not be pretended that a note, which has been fully paid, has any property or value in it, which can be the subject of proof or estimation.

Windsor,
February,
1837.

Pierce
v.
Gilson,

If the declaration, then, can be sustained, it is on the ground that trover may be sustained for that, which is, in itself, utterly valueless, with a view to protect the party from a future action for the same cause. In other words, it may be sustained, not to recover the value of property converted, but for the sole purpose of creating evidence in relation to it. And, for such purpose, it is believed no authority can be found sustaining it.

Admit the principle, that trover may be sustained for a paid note in the hands of the payee, and it follows that justices of the peace have unlimited jurisdiction in relation to notes of hand. The damages, in such cases, are necessarily nominal, and the maker of a note of \$500, or any other sum, may set up payment, bring his action of trover for the note, before a justice of the peace, setting his damages at five or ten cents, and if he can succeed in getting a judgment, the note is forever barred.

But it is said, in the present case, that the final payment is not indorsed on the note, and that the plaintiff's name is not erased or obliterated. If either had been done, it will not be pretended that the action could have been sustained.

Can this, however, difference the case? It is only another form of the evidence, and can the right of action depend upon the mere form of the evidence? It is true, the evidence in this case did not exist in either of these forms, but it existed in some form, or the plaintiff could not have obtained a verdict, and the mere form of the evidence certainly cannot vary the principle.

The case of *Todd* v. *Crookshanks* is believed to be the only case, that can be found, that is directly in point. But the plaintiff relies very much upon the case of *Buck* v. *Kent*, 3 Vt. Rep. 99. But that case, as well as the cases there cited, is believed to rest on very different principles. The action, in that case, was not brought to try the question of payment, but it was to recover substantial damages for an injury, occasioned to the plaintiff, by the wrongful conversion of the note. The note had been disposed of by the defendant, in violation of his agreement, and for a valuable consideration, and the plaintiff had paid the full amount of it. He was then most manifestly entitled to the amount he had paid. No such facts exist in this case. So, too, in the cases cited from 6 Mass., 2 Bos. & Pull., and 10 Johns. Rep., the facts are different from the present case, and so, upon examination, will it be found with all the other cases. And, in no one instance, can a case be found, it is believed,

where the action has been sustained upon grounds such as exist in the present case.

*C. Coolidge, for plaintiff.*

The plaintiff, as the maker of the note in question, had always, from the moment he made it, the *general* property in it ; and, on the instant of its being paid, his right to the possession of it accrued.

I. Because, though paid, the note was on the face of it evidence of a debt, and was, therefore, susceptible of being used to his prejudice. He was, also, entitled to it as being, in *his* possession, *prima facie* evidence that he had paid it. It would constitute a means of defence. That the note was of no value to the defendant, does not affect the question. It was of value to him, who made it and had paid it. The case shows that the plaintiff's name was still on the note, and in no way obliterated.

II. So universal is the practice of surrendering paid notes, it may well be considered as implied in every case of giving a note, that, whenever the maker shall pay it, he will be entitled to have it given up to him ; and, perhaps, no stronger proof of the universality of this usage can be afforded, than is afforded by the fact, that hardly a case is to be found in the books, in which the question has directly arisen.

III. The right claimed by the plaintiff is well grounded upon authority. See Starkie Ev. 1503. 18 Com. Law Rep. 146. 3 Johns. cases, 243. 3 Vt. Rep. 99.

As to the refusal of the conrt to permit evidence, by others, to be given to a quarrel existing between the plaintiff's witness and the defendant, it is insisted that, when the witness may be contradicted by other evidence, if he deny the particular fact, the law requires that the witness himself be *first* inquired of, as to the fact. 3 Starkie Ev. 1741, 1753,-4,-5.

The opinion of the court was delivered by

Williams, Ch. J. That an action of *trover* may be maintained for a written security, is too well settled to admit of dispute. A paper, whether it be a lease, deed, note, or bill of exchange, is but evidence of a title, or of a contract ; and, if lost or wantonly destroyed, the title or the debt is not thereby destroyed. The same objection, which has been insisted on here, might be urged as an objection to any action of trover for a written security, viz. that the same evidence, which would maintain the action, would supply the want of the paper, whenever it should

become a subject of controversy. As evidence, such papers have a value attached to them, and, therefore, whoever illegally withholds them from him, who is entitled to the same, is liable to an action of trover. A note is evidence of a sum of money due from the maker, and, as such, is of value to the holder, and because it is such evidence, it is of value to the maker to have it in possession, or cancelled, when he has paid the same, either as evidence of his having made the payment, or to suppress an evidence of his indebtedness, which ought not to exist. To compel a person to deliver up papers to be cancelled, which would otherwise be evidence of their contents, but which ought not to be held for that purpose, is frequently asked for and ordered in chancery. Suits in chancery, and writs of *audita querela*, may be instituted, *quia timet*, when the same evidence, which would sustain the bill or suit, if it could always be preserved, would prevent the fears from ever being realized.

The right of the person, who has paid a note, to have it delivered up to him, was recognized in the case of *Eastman* v. *Potter*, 4 Vt. Rep. 313, and in several cases there referred to. The very question, whether an action of *trover* can be maintained, for a note paid, at the suit of the person making the payment, has been settled by authority. The cases, mentioned in 3 Starkie, 1503, as well as the decision in the case of *Buck* v. *Kent*, 3 Vt. Rep. 99, are decisive that such an action may be maintained. The case from 3 Johns: 432, is the only one conflicting with this principle. But while such an action is recognised, it should be so guarded as to prevent either inconvenience or injustice. It will not answer to permit a litigated question of payment to be decided in such an action. The action should be permitted only where, not only the evidence of payment is unequivocal, but also where it was understood by both parties. As long as that subject is in dispute, and while the holder of the note claims that it is not fully paid, he has a right to retain the note as evidence of indebtedness. In this case, the evidence introduced tended to show that the note was paid and left, by mistake, in the hands of the defendant. If such were the facts, the plaintiff was entitled to the note. But, if, at the time the plaintiff paid the note, as he contends, the defendant insisted that something further was due, although he may have been under a wrong impression as to that fact, he could safely insist upon retaining the same, until the question of payment was settled.

On the other question, we recognize the rule, that whenever the credit of a witness is to be impeached, by proof of what he has said, declared, or done, he is first to be asked, upon cross-examination, whether he has said, or declared, or done that, which is to be proved, and we think it not only a satisfactory one, but one, which must be observed. And the application of this rule would, in many cases, require, that the witness should be inquired of, on cross-examination, in relation to controversies. Yet there are other cases of quarrels between a witness and party, where such an examination could not be necessary. A party has a right to have the jury know if there is any hostility or bad feeling existing between the witness and him, at the time of his testifying. For that purpose, it may be shewn that a law suit has existed, calculated to excite personal dislike; that a violent altercation has taken place, arising to personal violence. We can see no reason why, in some such cases, the inquiry should be first made of the witness. The aggression may have been on the part of the party, and not of the witness. The witness may think that he entertains no ill will towards the party. The fact of the controversy is all, which is to be shewn; but the nature of the quarrel is not to be explained. In the case before us, the defendant gave evidence, tending to contradict one of the witnesses introduced on the part of the plaintiff, and then offered to prove, that a violent quarrel existed between the witness and the defendant. What the nature of the quarrel was, is not stated. We think this testimony was proper, and we cannot see why it was incumbent on the plaintiff either to prove, or attempt to prove this, by cross examination of the witness. It was a distinct, collateral fact, not directly to impeach the witness, but to shew his feelings towards the party, and of the same character, as shewing the relationship, or connection between the witness and the party producing him. As the quarrel may have been of a nature, which did not require that the witness should be first inquired of, on cross examination, we think the county court erred in excluding the testimony offered.

Judgment reversed.