## STONE *v.* CLOUGH.

Trover may be maintained by the maker of a promissory note against the payee, after the same is fully paid, if the payee having the note in his possession refuses to deliver it to the maker upon demand, or if, after payment, the payee disposes of the note.

TROVER, for a promissory note, which the plaintiffs alleged to have been signed by them, dated October fifth, 1855, wherein the plaintiffs promised to pay the defendant, or bearer, one hundred and fourteen dollars, in one year from date, with interest annually, and to have been converted by the defendant. Plea, the general issue.

The plaintiffs proved that they hired of the defendant $114, in money, upon the day of the date of said note, and gave him their note for that amount, payable in one year, and gave him a mortgage to secure the note; that on the eleventh day of February, 1856, they hired $100 more, in money, of the defendant, and that they then computed the interest on said note, and gave a new note of that date for $216.39, that being the amount of their first note and interest, and the $100 in money then obtained, said last note being payable to the defendant, or bearer, in one year, with interest annually, and that they gave another mortgage to secure the second note; that it was agreed that the first note was paid by the giving of the second, and was to be given up as soon as the defendant should get his second mortgage recorded, which he did in a few days after its date; that after said second mortgage was recorded, and before the year had expired in which the first note, by the terms of it, was to become due, they demanded said note of $114 of the defendant, who refused to give it up; and that, after the expiration of said year, they had again repeatedly demanded said note of the defendant, but he had refused to deliver it.

The last mentioned note for $216.39 was paid and taken

Stone *v.* Clough.

up before the commencement of this suit.   The defendant then produced the note sued for, in court, and admitted that it had been fully paid to him by the plaintiffs, as they had stated; but it was not indorsed as paid, or in any way cancelled.

It was agreed that judgment should be rendered for the plaintiffs, for nominal damages and costs, or for the defendant, according as the opinion of the court should be upon the foregoing facts; and the questions of law arising upon the foregoing case were assigned to the law term of said court for determination.  —

*Benton & Ray*, for the plaintiffs.

1. The plaintiffs, being the makers of the note in suit, had a general property in it at all times; and when they paid the note, their right to its possession accrued instanter.

2. This note, though paid, was still evidence of a debt, on its face, and susceptible of being used to the plaintiffs' prejudice.   They were entitled to it for the reason that if the note was in their possession, it would furnish *primâ facie* evidence that they had paid it; whereas, if it was found in the possession of any one else, the contrary presumption would arise.

3. Here the plaintiffs' names still remained on the note, in no way obliterated, and it was of value to them to have their promise cancelled, although they had paid the sum due.   It does not affect the case at all that the note was of no value to the defendant.

4. The practice of surrendering paid notes has become so general, that it may well be considered as implied, in every case where a note is given, that the maker is entitled to its possession whenever he pays it in full.

5. The form of action adopted by the plaintiffs is well grounded upon authority.   *Pierce* v. *Gilson*, 9 Vt. 216; *Buck* v. *Kent*, 3 Vt. 99; 18 E. C. L. 146; S. C. 1 Ch. 501; 3 Stark. Ev. 1503.

*Burns & Fletcher*, for the defendant.

1. The note, having been paid, was of no value, and therefore not the subject matter for an action of trover: that which may be the subject of an action of trover must be a thing of some value.

2. There is no evidence of a conversion. The mere neglect to give up the note does not amount to a conversion. The case of *Todd* v. *Crookshanks*, 3 Johns. 432, is directly in point for the defendant.

SARGENT, J. That trover may be maintained for a promissory note wrongfully converted while it remains unpaid, and while it is the evidence of a subsisting contract and liability to pay, is too well settled to call for any citation of authorities; and that any written security, or other paper containing evidence of a title, or of a subsisting contract, may be the foundation of this action, cannot admit of dispute. But upon the question raised in the case before us, there may be room for difference of opinion, as there would seem to be some conflict in the authorities upon that subject. The defendant's ground of defence is, that trover is an action founded on property, and that it cannot be sustained for that which is utterly valueless; and it is claimed that the note in question had been lawfully paid, and therefore ceased to be of any value to any one; that it had no property or value in it, which can be the subject of proof, of computation, or of estimation, and that it cannot be considered as property in any sense of the term. *Todd* v. *Crookshanks*, 3 Johns. 432, would seem to be an authority in favor of this position; for it is said in that case that though trover may be maintained for a promissory note in the hands of a third person, yet if it has been paid, and a receipt given for the amount, it is of no value, and neither trover nor detinue can be maintained. But we find that a statement of the whole case makes it more doubtful upon what precise point the decision may

Stone *v.* Clough.

have turned; for it appears that the note in question was given to two executors, and the plaintiff paid it to one of them, taking his receipt therefor, while the note remained in the hands of the other executor. We can readily see that in these circumstances—the giving of the receipt as evidence of the payment, and the possession of the note by the party who had received no part of the pay thereon—there may have been other considerations which might properly have influenced the decision of the cause, beside the fact that the note was of no value. The court, in delivering the opinion, say, "After the note was paid, and a receipt in full given by one of the payees, it was completely discharged, so as to be of no value;" and it is said that the note might also be useful to the other payee, who was a co-executor, to show that he had not received the money. This does not settle that where the note is paid, and no receipt or other evidence of payment given, the note would not be of some value to the plaintiff as evidence of such payment.

We find a reference in 3 U. S. Dig. 582, to a case—*Besherer* v. *Swisher*, 2 Penn. 748—in which it is said to have been held that trover would not lie to recover a bond which had been paid, but not taken up; but what the particular circumstances were we are not informed. In *Lowremore* v. *Berry*, 19 Ala. 130, it is said that trover will not lie for the conversion of a promissory note after it has been paid or legally discharged in any manner. But the facts in that case were, that the note in question had not been paid, or legally discharged, though the word "paid" had been written across the face of it by mistake, or by some one without authority; and, upon the facts in that case, it was held that trover did lie for the conversion of the note. But the plaintiffs here contend that they had such a property in, and right to the immediate possession of, said note at the time of the first demand, and that the note was of such value to them as that they can maintain this action in trover

for its wrongful conversion; and we are inclined to think that the more reasonable view. Whether this note was of value to the defendant or not, so long as he kept it in his possession, is not very material. Suppose the plaintiffs could have proved it paid, and thus have protected themselves against any further claim made by the defendant upon the note, still, the note, not being cancelled in any way, was *primâ facie* evidence of a debt, and could very easily be used to the plaintiffs' prejudice. The defendant might have sold the note before by its terms it became due, and, in the hands of an indorsee, for value and without notice, it could have been collected, notwithstanding the plaintiffs had once fully paid it to the defendant. It was thus of value to these plaintiffs as evidence of the payment of a pre-existing debt. It would, in their hands, constitute a means of defence. It may be said that the same evidence which will enable the plaintiffs in this suit to recover, would be sufficient to supply the want of the paper whenever any controversy should arise concerning it; but we have seen that this would not be true, in case the note were held by an innocent indorsee. But supposing it to be again claimed by the payee, and suppose that the plaintiffs could in some way make such proof as would supply the place of the note in their possession, and thus protect themselves against such unjust claim, that would be no reason why trover could not be maintained. If it were so in this case, it might for the same reason and with equal force be urged that trover could not be maintained for a deed or other evidence of title wrongfully detained. The plaintiffs might, in that case as well as in this, by other evidence prove the contents of the deed, and thus supply the defect in their title caused by the loss of their deed; and the same evidence which would enable the plaintiffs to maintain trover for the conversion of the deed, would be sufficient to supply the deficiency in their title perhaps, should any question afterward arise concerning it. But such papers have a value attach-

ed to them as evidence of title; and therefore whoever withholds them wrongfully from him who is entitled to them, is liable to an action of trover. The same is also true in regard to other papers, containing the evidence of a subsisting contract for the payment of money, or the performance of any other undertaking. Now if these papers are thus the subjects of the action of trover, because they are valuable as evidence of title, or of a subsisting contract, it may be difficult to see why a note that has been paid, and not cancelled in any way, is not and should not be the subject of an action of the same kind in favor of the maker, since a note originally is only evidence of a sum of money due from the maker, and as such is of value to the holder; and simply because it is such evidence, does it become of value to the maker after it is paid,—as it is important to him to have it in his possession, either as evidence of his having made the payment, or to suppress an evidence of indebtedness which ought not to exist, the debt being paid. To compel a person to deliver up papers to be cancelled, which would otherwise be evidence of their contents, but which ought not to be held for that purpose, is frequently asked for and ordered in chancery. Suits in chancery, and writs of *audita querela,* may be instituted *quia timet,* when the same evidence which would sustain the bill or suit, if it could always be preserved, would prevent the fears from ever being realized. *Pierce* v. *Gibson,* 9 Vt. 216. The fact that the paper in the hands of the original payee might be worthless, might be a very good reason why he should give it up when it is paid; but it can be no reason why the original maker should not be allowed to recover in an action of trover for it, when it is wrongfully withheld from him upon demand, and when the note is of some actual value to him as evidence of the payment of a former indebtedness.

There can be no doubt, we think, that the plaintiffs have such a right to immediate possession of the note, after it

is paid, as to enable them to maintain trover. Upon such payment the note becomes theirs, and they are entitled to its immediate possession. The payee of a note has not only the right to have it paid at maturity, and in the manner and at the place specified, but it is his duty to have said note at such time and place, and to be ready to produce and deliver it up, upon payment. Story on Prom. Notes, sec. 115; *Eastman* v. *Pattee*, 4 Vt. 313. And so universal is the practice of surrendering notes upon payment, that it may perhaps be considered as an implied understanding and agreement, in every case of giving a note, that whenever the maker shall pay it he shall be entitled to his note, and the same shall be delivered up to him. Perhaps no other usage of trade or of business has been so universally uniform as this. If usage and custom can establish any rule, then this may well be considered an established rule, notwithstanding there may be some conflict in the authorities on that point. In deciding this case it does not of course become necessary to settle what the rule shall be in case the note has been lost or destroyed, as that question is not raised by the case. But we apprehend that no trouble can arise upon that point, because where the note was not negotiable, or made payable to order and not indorsed, the payee could give a receipt which would be a full and perfect discharge; and where the same was payable to bearer, or had been negotiated, then an indemnity should be given to secure the maker against being called upon the second time for payment, after it has once been paid; and if a note had been paid, which was actually lost or destroyed, that would of course be a good excuse for not delivering it, and would be a good answer to an action of trover brought for the conversion of the note, provided the party sued had offered, or would give, the proper discharge or indemnity. In England it is held that " the holder of a bill of exchange cannot, by the custom of merchants, insist upon payment by the acceptor, without producing and offering to deliver

up the bill;" and so far has this doctrine been carried there, that it is held that the indorsee of a bill having lost it, could not, in an action at law, recover the amount from the acceptor, although the loss was after the bill became due, and the indorsee offered an indemnity; but it is there held that he must first tender sufficient indemnity, and then, if payment is refused, he may enforce payment in a court of equity. *Hansard* v. *Robinson*, 7 B. & C. 90. The principle is sustained by all their authorities, that payment cannot be insisted on upon a bill or note, by the holder, unless the holder produces the same, and offers to deliver it up. *Pierson* v. *Hutchinson*, 2 Camp. 211; *Poole* v. *Smith*, 1 Holt N. P. C. 114; *Dangerfield* v. *Wilby*, 4 Esp. N. P. C. 159; *Bevan* v. *Hill*, 2 Camp. 381; *Ex parte* Greenway, 6 Ves. Jr. 812; *Davis* v. *Dodd*, 4 Taunt. 602; *Champion* v. *Terrey*, 3 Br. & B. 295; Story on Prom. Notes, secs. 243, 244. We think, then, that we are safe in going as far as we are required to go in this case, and hold that where the maker of a note has fully paid the same to the payee, and the note is not lost or destroyed, the maker has such a right to the immediate possession of the note, that, upon demand and refusal to deliver, he may maintain trover. Nor would there seem to be any lack of authority in favor of the view that we have taken, that the note, when thus paid, is the subject of property, is of value to the maker, and that upon this ground trover will lie. Trover lies at the suit of one of the makers of a promissory note, especially if the other maker signed as surety. *Anonymous*, 1 Ch. 501. The court in this case say, "The action was well brought in the name of the plaintiff only, because he appears to be the principal debtor. It is not a joint note; it is a promise to pay by the plaintiff, and the other signer was a surety; but, even if both were to be considered as debtors, the objection would not be good, because either might have declared singly; and at most the objection

should have been pleaded in abatement, and was no ground for a nonsuit."

*Buck* v. *Kent,* 3 Vt. 99, was a case where the note had been sold and indorsed by the payee after it had been paid and demanded by the maker, and a suit had been brought against the maker by the indorsee; and the maker had paid the note to him, and commenced trover against the payee for the conversion of the note; and it was held that he was not bound to make his defence against the indorsee, but that he might recover in trover for the conversion of the note; that the note, though paid, was of value to him; and it is intimated that the plaintiff might voluntarily pay the note, after its transfer, or he might allow the same to be sued and pass into judgment, and pay the amount thereof on execution; or that, if he had resisted the payment, and defeated the suit brought thereon by the indorsee, and in that way avoided the payment of the note, or any part thereof, it would not have prevented him from maintaining trover against the payee, but would only have reduced the damages in such action.

But the case of *Pierce* v. *Gibson,* 9 Vt. 216, is directly in point. It is there held that the maker of a promissory note may maintain an action of trover against the payee, when the note has been paid, and left uncancelled in the hands of such payee by mistake, upon demand by the maker and non-delivery by the payee. It is suggested in that case that it would not answer to permit litigated questions of payment to be decided in such actions; that it could only be allowed where the evidence is not only unequivocal, but also where it was understood by both parties; but that, while that subject was in dispute, and the holder of the note claimed that it was not fully paid, he has a right to retain the note as evidence of indebtedness. Although these suggestions have no application to the case now under consideration, yet we can see no good reason upon which they can be founded. Suppose the maker of a note

Stone *v.* Clough.

has paid or tendered to the payee the full amount which he claims is due upon it, but the payee claims more, and refuses to give him up the note : the maker demands his note, and, upon its being withheld, brings trover for its conversion. What reason is there why the pretenses, or the honest belief and claim of the payee that the note was not fully paid, should prevent the maker from maintaining his action of trover, provided that upon trial he proves that it was fully paid before demand ? Why should not the parties stand upon their legal rights, in the case we have supposed, as much as though the payee had, after payment or tender of what the maker claimed was due, commenced a suit upon the note to recover what he claimed as the balance due ? Would the fact that the maker pretended or believed that he had fully paid the note, affect the payee's right to bring and maintain his action upon the note, if he should prove that the note had not been fully paid ? This will not be pretended. And is there any reasonable ground upon which a distinction can be made between the two cases ? None occurs to us.

In *Fullum* v. *Cummings*, 16 Vt. 697, it was held that, where a debtor had made copies of his creditor's accounts against him, and his creditor had got possession of those copies and refused to re-deliver them to the debtor, the debtor might sustain trover therefor against such creditor. It may be difficult to see how such copies could be of more value to that plaintiff, than a note of hand, when it is fully paid, is to the maker.

In *Keeler* v. *Fassett*, 21 Vt. 539, a judgment creditor brought trover for a writ of execution which he had sued out upon his judgment. Held, that such action may be sustained, even though the execution may have expired previous to the commencement of the action. *Royce*, C. J., in stating the reasons for the opinion in that case, said; " We also consider that the plaintiff continued to have an interest in it [the execution], though it had become an

Stone *v.* Clough.

expired process, since its absence from the office of the justice might embarrass her in procuring a fresh execution on her judgment, and might even create a presumption that the judgment had been satisfied; and hence, as between these parties, the plaintiff was entitled to have possession of the writ, and may well sustain this action if the defendant persisted, without right, in withholding possession from her." Here no rights had been acquired under the execution, nor had any proceedings been commenced upon it. It had been allowed, by its own terms and limitations, to expire, and its only value was as evidence to assist the plaintiff in obtaining another execution, and as tending, in her hands, to rebut any presumption that might arise of satisfaction. Was not the note, in the case at bar, of value to this plaintiff for the same or similar reasons ?

This view is also sustained by *Goggerly* v. *Cuthbert,* 2 N. R. 170; *Trenttel* v. *Baranden,* 8 Taunt. 100; *Evans* v. *Kymer,* 1 B. & Ad. 528. In the case before us there was no controversy in regard to the full payment of the note prior to the demand. The note was not lost, or destroyed, but was in the possession of the defendant when it was demanded; and no excuse was given, or attempted to be given, and none existed, why it should not be delivered up : and there must, in accordance with our views and the agreement of the parties, be judgment for the plaintiff; but, as the note has been produced in court to be given up to the plaintiff, that judgment can be only for nominal damages, and costs.