THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, *v.* HENRY PENHOLLOW, APPELLANT.

42h    103
e172 NY²149
e172 NY²149

*Amendment to the United States Constitution requiring the accused to be confronted with the witnesses against him — not applicable to trials in State courts for State offenses — construction of this provision in the bill of rights of the State of New York — right of the accused to testify as to a conversation with a witness who has testified as to a confession made by him — right of the accused to cross-examine a witness in order to show bias against him.*

Upon the second trial of the defendant for the crime of extortion the people were allowed, against the defendant's objection and exception, to read in evidence the testimony of a witness who had been produced and examined on the former trial, but who was dead at the time of the second trial.

*Held,* that an objection to the admission of the evidence, as being a violation of the sixth article of the amendment of the Constitution of the United States, providing that in all criminal prosecutions the accused should be confronted with the witnesses against him, was not well taken, as the right secured by this clause of the Constitution is limited in its application to citizens of the United States on trial in the Federal courts charged with a violation of the Constitution of the United States or the laws of congress.

That the similar provision contained in the bill of rights of the State of New York did not require that the accused should in all cases be confronted with the witnesses against him upon a pending trial of the indictment, but is satisfied, in cases of necessity, if the accused has been once confronted by the witness against him, in any stage of the proceedings upon the same accusation, and has had an opportunity of a cross-examination by himself or by counsel in his behalf.

The offense consisted in extorting from one Reubly the sum of five dollars to prevent his arrest for stealing one dollar from one Sliker. The people called as a witness one Kapple, who testified to the confessions of the prisoner made to him at a time and place mentioned by the witness. He testified, in substance, that the prisoner admitted to him some of the facts and circumstances upon which the people relied to secure a conviction; and he further stated that the prisoner said that his purpose in exacting the five dollars from the prosecutor was to secure revenge, and as the opportunity occurred he took advantage of it and redressed a wrong which the prosecutor had done him on a former occasion. The prisoner, having been called as a witness in his own behalf, was asked by his counsel to state the conversation which he had with Kapple. An objection by the people's counsel, interposed without any reason being stated therefor, was sustained by the court, which stated to the prisoner that any conversation which he had with Kapple in reference to the payment of the money, or in regard to the motive in going to the house of the prosecutor, was proper, but anything further was not.

*Held,* that the limitation thus placed on the right of the prisoner to state as a witness all the conversation which he had with the witness Kapple was erroneous, as he had a right to give his version of the interview and all the conversation which passed between the parties as he claimed it to be.

On the cross-examination of Kapple he stated that he was not fond of the defendant, and that he did not speak kindly to him. He was asked: "Did you tell Penhollow last week that he was guilty and you knew it?" Upon a general objection interposed by the district attorney the court refused to allow the witness to answer.

*Held,* error; that the defendant had the right to put the question as bearing upon the question as to whether the witness had any bias, prejudice or hostility against him.

That his right so to do was not affected by the fact that the witness had already admitted that he did not feel kindly to the defendant, as the latter had the right to show when, where and the peculiar circumstances under which the witness had displayed his prejudice and bias, so that the jury might the better determine in what degree, if any, the witness' credibility had been impeached.

APPEAL from a judgment of the Court of Sessions of Chautauqua county, entered upon a verdict convicting the appellant of the crime of extortion, and sentencing him to the Auburn State prison for the period of one year at hard labor.

The offense consisted in extorting from one Reubly the sum of five dollars, to prevent his arrest for stealing one dollar from one Sliker.

*Record & Hooker,* for the appellant.

*A. B. Ottoway,* district attorney, for the People.

BARKER, J.:

The evidence upon which the appellant's conviction stands is conflicting, but it fairly tends to establish his guilt. As the judgment should be reversed and a new trial granted for error of law appearing in the record, we have not examined the evidence with the same attention we would have done if the question of the insufficiency of the proof to establish the offense charged was the only question presented for our consideration. A previous trial had taken place on this indictment, in the same court, which resulted in a disagreement of the jury. On that trial the People produced and examined as a witness Chloe Reubly, who gave material evidence tending to prove the guilt of the accused. At the time of this trial the witness was dead, and the People offered to read in evidence her testimony, as given on the former trial. To the reception of this proof the defendant objected, on the ground that it was incompetent and unconstitutional, being in violation of the sixth article of the amendments to the Constitution of the United States, which provides that in all criminal prosecutions the accused shall be confronted with the witnesses against him. This provision has no application to criminal trials in the State courts for a violation of State laws. This right, secured to the accused, is limited in its application to citizens of the United States on trial in the Federal courts, charged with a violation of the Constitution of the United States or of the laws of Congress. This clause of the Constitution, relied upon by the accused as a ground of his objection, has been frequently and deliberately interpreted by the Federal courts, and the decisions are so full, emphatic and conclu-

sive that it is only necessary to cite the cases where the rule as stated may be found. (*Barron* v. *Mayor, etc., of the City of Baltimore,* 7 Peters, 247 ; *Withers* v. *Buckley,* 20 How. [U. S.], 84 ; *U. S.* v. *Cruikshank,* 92 U. S., 542 ; *Walther* v. *Sauvinet,* 92 id., 90 ; *People* v. *Williams,* 35 Hun, 516.)

Our own State Constitution does not contain any provision securing to the accused the right and privilege of being confronted by the witnesses against him. In the bill of rights adopted by the legislature there is a provision similar to the one embraced in the Constitution of the United States, and expressed in the identical words, to wit : " In all criminal prosecutions the accused  *  *  * has a right to be confronted by the witnesses against him." The accused was confronted by the witness on the former trial and he had an opportunity of making a cross-examination, and that satisfies the requirements of the statutes. The rights secured to the accused, it is to be observed, is " to be confronted with the witnesses against him." This language does not require that the accused shall, in all cases, be confronted with the witnesses against him upon a pending trial of the indictment. The courts have held that the statute is satisfied, in cases of necessity, if the accused has been once confronted by the witness against him in any stage of the proceedings upon the same accusation and has had an opportunity of a cross-examination, by himself or by counsel, in his behalf. (*People* v. *Newman,* 5 Hill, 295 ; *Crary* v. *Sprague,* 12 Wend., 41 ; *People* v. *Williams,* 35 Hun, 516 ; *Brown* v. *The Commonwealth,* 73 Pa., 321.)

Mr. Colby, in his work on Constitutional Limitations ([3d ed.,] 318), in commenting on constitutional provisions of this character, remarks : " If the witness was sworn before the examining magistrate, or before a coroner, and the accused had an opportunity then to cross-examine him, or if there were a former trial on which he was sworn, it seems allowable to make use of his deposition, or of the minutes of his examination, if the witness has since deceased, or is insane or sick and unable to testify." By the rule thus well established it was clearly competent to read the evidence of the deceased witness, as given on the former trial, notwithstanding the protest of the prisoner.

The people called as a witness one Kapple, who testified as to

the confessions of the prisoner made to him at a time and place mentioned by the witness. He testified, in substance, that the prisoner admitted to him some of the facts and circumstances upon which the people relied to secure a conviction, and he further stated that the prisoner said that his purpose in exacting the five dollars from the prosecutor was to secure revenge, and as the opportunity occurred he took advantage of it and redressed a wrong which the prosecutor had done him on a former occasion. The prisoner was called as a witness in his own behalf, and gave a detailed statement of the facts and circumstances connected with the accusation as charged in the indictment. He admitted that he had met Kapple and had a conversation with him at the time and place mentioned by that witness. The counsel for the prisoner then requested him to state the conversation he had with Kapple. The people's counsel interposed an objection, without stating the reason upon which it was made, and the same was sustained by the court and the defendant took an exception. It may be understood from the case that the court, at the time of making this ruling, stated to the prisoner that any conversation which he had with Kapple in reference to the payment of the money or in regard to the motive in going to the house of the prosecutor was proper, but anything further was not. It does not appear from the record that the prisoner related any part of the conversation he had with the witness Kapple. We think it very clear that the limitations thus placed on the right of the prisoner to state, as a witness, all the conversation which he had with the witness Kapple was erroneous, as he had a right to give his version of the interview and all the conversation which passed between the parties as he claimed it to be.

Kapple testified that the prisoner stated that " Mr. Reubly had swindled him on some oats some time, and he declared that if he ever had the opportunity he would have revenge, and this opportunity came up and he took advantage of it after hearing Mrs. Edwards state that he picked up a dollar. That is the substance of the conversation." Under the ruling of the court the prisoner was deprived of giving the language used at the interview, as he claimed it to be, and from denying that he had declared that he would have revenge against the prosecutor. The people, by Kapple's evidence, sought to

prove that the prisoner had the motive of revenge in extorting from the prosecutor the sum of five dollars.

The same witness, on his cross-examination, was interrogated as to the state of his feelings against the prisoner, and he stated that he was not "fond" of the defendant; that he "did not speak kindly to him." He was then asked this question: "Did you tell Penhollow last week that he was guilty, and you knew it?" The district-attorney interposed a general objection to the inquiry, and it was sustained by the court.

We think the exclusion of the inquiry was error. It is always a material question on the trial of causes, either civil or criminal, to ascertain the state of feeling on the part of the witness toward one or both of the parties, and, upon cross-examination, to inquire whether the witness has any bias, prejudice or hostility toward the party against whom he is called to testify, as bearing on his credibility, so the witness may be asked as to anything that may in the least affect his credit. If the matter rejected would tend to depreciate the credibility of the witness, it is the right of the party against whom he is called to produce it, and does not rest in the discretion of the court whether to receive or exclude it. This proposition is elementary, and is so stated by text writers, and the authorities are all one way upon the subject. (1 Greenl., § 450; *People* v. *Cunningham*, 1 Denio, 536; *Starks* v. *The People*, 5 id., 108; *Breen* v. *The People*, 4 Park. Cr., 380; *Martin* v. *Farnham*, 5 Foster [25 N. H.], 199; *Atwood* v. *Welton*, 7 Conn., 71; *Pierce* v. *Gibson*, 9 Vt., 222.)

There is no rule of evidence about which there can be less doubt. There is sometimes a difficulty in determining whether the fact sought to be proved is of such a nature and character that the jury might act upon it in discrediting the witness. But whenever it has that tendency, though in the least degree, its reception cannot be rejected without error. We must assume that the witness, if he had been permitted to answer the question, would have answered it in the affirmative. If the remark, which the question implies the witness made, had been addressed to a third person, a friend or neighbor of the defendant, no one would doubt, I think, but that the making of the statement would indicate a bias or prejudice on the part of the witness toward the accused. It would be indicative

of an unfriendly as well as of an unkind spirit. It is insulting in its character, and if friendship before existed, such a statement well might and would, naturally, terminate friendly feelings. To say of an accused person, who asserts his innocence before trial, that he is guilty of the accusation charged upon him, if followed up by a remark on the part of the speaker that he knows it to be true, has the natural tendency to injure the accused and to prejudice his case in the minds of his friends and neighbors and with the public generally, and to deprive him of such proper assistance and sympathy as most accused persons may expect from friends and acquaintances.

In support of the ruling the learned district attorney makes the point that, as the witness had already admitted that his feelings toward the defendant were not kind, it was not for that reason error to exclude the evidence which was only showing how such unkind feelings had been manifested. The defendant had the right to show when, where and the peculiar circumstances under which the witness had displayed his prejudice and bias, that the jury could the better determine in what degree, if any, the witness' credibility had been impeached. As the witness gave evidence as to the defendant's confessions, a class of evidence always received· with distrust, and in this case capable of contradiction only by the defendant himself, we think that he may have been injured by excluding the evidence.

The defendant took other exceptions during the trial which would require a close examination, except for the fact that a new trial must be granted for the reasons stated.

Judgment reversed, new trial granted, and the proceedings remitted to the Chautauqua County Court of Sessions, with directions to proceed.

SMITH, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment and order reversed and new trial ordered, and for that purpose the proceedings are remitted to the Court of Sessions of Chautauqua county.