## Evans *against* The Commonwealth.

In an action against the sureties of a constable upon his official bond to recover the amount of a judgment for which the constable became liable, the judgment previously obtained against the constable himself is conclusive evidence of the liability of the sureties.

In order to recover against the sureties of a constable, it is not necessary that the constable should have been discharged as an insolvent debtor: it is sufficient that it be proved by parol that he was insolvent.

ERROR to the common pleas of *Luzerne* county.

The Commonwealth of Pennsylvania, for the use of Jabel Carver, against John Evans, Benjamin Jenkins, and George Miller. This was an action upon the official bond of John Evans, who was a constable. Carver had previously sued Evans himself and obtained a judgment against him; and, when this suit was brought, Evans had applied for the benefit of the insolvent laws, but had not been discharged. Parol proof was given that Evans was insolvent, however, when this suit was brought.

Two questions arose: Whether the judgment of Carver against Evans, the constable, is conclusive in this action against his sureties?—and whether it was competent to establish the insolvency of the constable by parol proof, or whether any thing less than a legal insolvency was sufficient to enable the plaintiff to sustain his action. The court below (Scott, president) ruled both points in favour of the plaintiff. Verdict and judgment accordingly.

*Maxwell* and *Kidder*, for plaintiff in error, cited 6 *Watts* 228; 7 *Watts* 353; 5 *Bin.* 184; 17 *Serg. & Rawle* 354.

*Woodward, contra,* relied upon the decision in 17 *Serg. & Rawle* 354.

The opinion of the Court was delivered by

KENNEDY, J.—The principle of Masser *v.* Strickland, 17 *Serg. & Rawle* 354, as settled by a majority of this court, would seem to rule this case. There it was held that a judgment against the constable was not only conclusive against his sureties as to the misconduct or neglect of duty on the part of the constable, which was made the ground of action whereon the judgment was obtained against him, but likewise as to the amount of damages actually sustained by the plaintiff. According to the principle thus established, the judgment obtained by the plaintiff below in the suit against Evans alone, as a compensation for the damages which the former sustained by reason of the official neglect of duty or misconduct by the latter being conclusive upon his sureties, who were joint defendants in this action with him in the court below, and the plaintiffs in error here precluded all inquiry into the matters contained in the first and second points of the plaintiffs in error, which were submitted by them to the court below for their instruction on them to the jury. It was not competent for the plaintiffs in error to go behind that judgment, and set up any matter in this action which might have been objected to the recovery therein. As the answers, therefore, of the court below ought to have been against the plaintiffs in error directly upon their first two points, they cannot be injured thereby; so that, even if the answers of the court were erroneous, they have no right to assign them for error, or claim a reversal of the judgment upon that account. And, notwithstanding, it may be that the case of Masser *v.* Strickland was decided against the authority of the rule of analogy, which might have been very fairly extracted from the principles of the common law, yet as many cogent reasons exist for making such case as that and the present, an exception to the general rule on the subject; and, as it has, no doubt, been looked upon as such ever since it was so determined in that case, we all now agree that no change should be made. Seeing then that it has become the settled rule of the law in regard to the sureties in a constable's bond, that a judgment obtained in a suit brought against the constable alone for official misconduct or neglect of duty, will bind and be conclusive upon them, though not notified of the suit, they must be presumed to have known that such was the law, when they entered into the bond; and it must, therefore, be taken as a part of their obligation or agreement, that they were willing to be so bound and concluded, as often as judgment should be so obtained against their principal; and hence those who have become sureties for constables, since the establishment of the rule, in this respect, can have no reason to complain of it. Under this view then, it would seem that the objection originally made to the establishment and application of such rule to the sure-

ties of a constable has lost its force; and the tendency of the rule, in its operation, being to prevent creditors from being vexatiously and unreasonably delayed in having or obtaining execution of their judgments, which, it is said, is the life of the law, strongly recommends it on the ground of expediency and public policy.

The only question remaining to be decided, arises out of the third error assigned; which is an exception to the answer given by the court to the third point submitted by the counsel of the defendants below. By this point the counsel of the defendants below requested the court to instruct the jury that the plaintiff there could not recover, because the constable had not taken the benefit of, and been finally discharged under, the insolvent laws, before the commencement of this action. This instruction was claimed under the 19th section of the act of the 20th of March 1810, amending and consolidating the acts of assembly giving justices of the peace jurisdiction over debts not exceeding one hundred dollars; which enacts that, "Any constable who has or may thereafter give security agreeably to law for the faithful performance of the duties of his office, and afterwards, on neglecting or refusing to perform such duties, shall have judgment rendered against him for such neglect or refusal; and, on being prosecuted for the recovery of such judgment, *becomes insolvent,* abandons his country, or from any other reason it becomes *impracticable* for such judgment or judgments *to be recovered* from such constable, as aforesaid, &c., then, and in such cases only, the justice before whom the judgment or judgments stand unpaid, shall be and he is hereby authorised and empowered to issue a *scire facias,* and proceed against such bail for the recovery of judgments had as aforesaid, in the same manner that constables are now suable," &c. This action having been commenced in the court of common pleas, and not before a justice of the peace, it might possibly admit of a question, whether the section of the act, just read, be applicable to it or not. Be this, however, as it may, we think the court below were not bound to give the instruction required by the counsel of the defendants below. If the evidence given showed clearly beyond all doubt that the constable was *insolvent* at the time this action was commenced, and therefore it had become *impracticable to recover* from him the judgment obtained against him in favour of the plaintiff below, his bail, according to the plain and natural import and meaning of the 19th section of the act of 1810, were liable to be sued for it upon their bond. The insolvency of the constable here was proved on the trial most clearly, and not attempted, as it would seem, to be controverted. Before the commencement of the action he had applied for the benefit of the insolvent laws, but did not obtain a final order of relief and discharge until some time afterwards.

Judgment affirmed.