WILLIAM B. SPENCER AND HIRAM M. DEARTH *v.* WILLIAM B. DEARTH, APPELLANT.

*Trover. Promissory Note. Judgment. Parties of Record. Parties in Interest. Notice. Guaranty. Joint and Several Contractors. Privity. Principal and Surety. Estoppel.*

Joint and several promissors on a note may join in an action of trover for the note, though one signed as surety.

It being settled law in this State that the action of trover will lie to recover damages for refusing to deliver up a paid note, it follows that the question of payment can be litigated in this form of action; and the rules as to the admissibility, weight, and sufficiency of such payment are the same in this action as in the trial of the same issue in any other form of action.

The principle will be found to run through nearly all the American cases that the judgment of a court of competent jurisdiction, directly upon a particular point, is, as between the parties, conclusive in relation to such point, though the purpose and subject matter of the two suits be different; hence a judgment may not only be evidence, but conclusive evidence in relation to such point, and still be no bar, strictly and technically speaking, to a second action. WILSON J.

In general, courts will look and ascertain who are the real parties, and give effect to the former suit accordingly. WILSON, J.

Ordinarily where a party has a right of recovery over, secured to him either by operation of law or express contract, and he has given the person so responsible due notice of the suit, the judgment, if obtained without fraud or collusion, will be conclusive evidence for him against such person upon every fact established by it. WILSON, J.

Notwithstanding the decisions in *Douglas* v. *Howland*, 24 Wend., 35, and in *Jackson* v. *Griswold*, 4 Hill, 522, to the contrary, it has been held in a number of the more recent decisions that an engagement by one man to be responsible for another, creates such a privity between them as to render a recovery against the latter *prima facie* evidence in a suit brought on the guaranty given by the former. WILSON, J.

Also that the relation between joint and several contractors, whether they stand in the position of principal and surety or are both principals, creates such privity between them that a judgment for or against one of them, founded on the merits and not on technical grounds, and obtained without fraud or collusion, is evidence for or against the other in a subsequent suit involving the matter adjudicated in the former action. WILSON, J.

The case of *Austin* v. *Estate of Hall*, from Chittenden County, not reported, heard at the General Term, Nov. 1863, decides that where the amount due upon a promissory note has, upon defense of payment made to the plaintiff, been determined in an action in favor of the payee or endorsee against the maker, an endorser of the note, though not a party of record in the former action and having had no notice of it prior to the rendition of judgment, may, in a subsequent suit in the name of the same plaintiff against such endorser, plead the judgment in the former action as showing the amount due on the note upon which the judgment was rendered; that the judgment therein will be conclusive as to the plaintiff in respect to the question so adjudicated, and that parol evidence is admissible to prove the ground on which the former judgment was based. WILSON, J.

A judgment against the plaintiff, on the ground of payment or offset in a suit in his favor against one of the makers of a promissory note, is a bar to a recovery against

either of the other makers of the note, though not a party to the former adjudication, and whether in fact having signed the note as principal or surety.

The plaintiffs were co-signers of the note in question payable to the defendant, one as principal, the other as surety. Subsequently the surety and defendant submitted all matters of difference between them to arbitration, and the defendant presented said note for allowance against said surety, but the arbitrators disallowed the same, award'ng that it had been paid the defendant by the principal. The plaintiffs then brought this action of trover against the defendant for the note. *Held,* that said award was conclusive evidence of payment, and the plaintiffs were entitled to recover.

THIS was an action of trover for a joint and several promissory note, given for $35.00, dated November 7, 1856, signed by the plaintiffs, and payable to the defendant. Plea, the general issue, and trial by jury, March term, 1867, PROUT, J., presiding.

On the trial, it appeared from the plaintiffs' testimony that the note in controversy was given for a colt, which the plaintiff, Hiram M. Dearth, purchased of the defendant, his father, and that the plaintiff, Spencer, signed it as surety, at the request of the defendant; that soon after the execution of the note, the said Hiram M. Dearth went west, where he has continued to reside ever since; that before he went west, with a view to provide for the payment of said note, he put into the hands of one Rollin Spencer, (now dead,) a brother of the plaintiff, Spencer, a note or obligation for $45.00, signed by one Holbrook, to be paid and delivered over to the defendant, Hiram M. Dearth, and which was payable in sawing boards at said Holbrook's mill; that said note or obligation was passed to the defendant, who took and accepted the same in payment of the note he held against the plaintiff, and at the same time agreed to deliver said note to the plaintiff, Spencer, it being the same note for which this action is brought.

It further appeared from the plaintiffs' testimony, that, in 1864, the plaintiff, Spencer, having commenced an action on book account against this defendant, they met and agreed to submit all matters of difference existing between them, as well as the claim involved in said suit, to arbitration; that the plaintiff, Spencer, and the defendant appeared before the arbitrators, and had a hearing in respect to the matters submitted; that at said hearing, the defendant presented said note, which is in controversy in this action, and claimed to be allowed the amount thereof against the plaintiff, Spencer; but the arbitrators disallowed the

same in their award, which was duly published, awarding that it had been paid the defendant, with the note or obligation of said Holbrook, as above stated.

It further appeared that a suit for the collection of said note given by the plaintiffs, as above stated, (and which is against the plaintiff, Spencer,) was brought by the defendant, and is now pending in the supreme court of New Hampshire, in Coos county, and has been transferred to the full bench of said court, on questions of law. The suit in New Hampshire was not commenced till December 19, 1866, and after this suit was commenced.

The defendant offered to prove:—1. That the Holbrook note or obligation was never taken by him in payment of said note. 2. That nothing had ever been paid by either of the plaintiffs, or any one else, upon said note, but that the same is in fact wholly unpaid, but the court, on plaintiffs' objection, *pro forma*, excluded the evidence, holding the said award conclusive upon the question, and directed a verdict for the plaintiffs, to which the defendant excepted.

*Ray & Ladd*, for the defendant.

The award is not conclusive upon the question of the payment of the note in this cause. The submission was not between the parties to this suit. The effect of an award is very much like that of a judgment, which binds parties and privies, but not strangers. Hiram M. Dearth was in no sense a party or privy to the arbitration. The note, so far as he is concerned, was not, and could not have been, merged in the award. Suppose the arbitrators had allowed it against Spencer, and Spencer had failed to perform the award, it is clear no action would lie against H. M. Dearth on the award, and it is equally clear that this defendant might sue and recover the note of him. In order to be conclusive, the award must have the same effect, whichever way the decision is made. The effect of this award was, at all events, nothing more than to release Spencer from his liability on the note, and not to give either Spencer or Dearth, or the two jointly, a right to its possession. But admitting the fact stated in the award to be true, (which we deny,) namely, that the note in question was

paid by the Holbrook obligation, this action cannot be maintained. Spencer was only a surety on the note. It was a duty which H. M. Dearth owed to Spencer, as well as to the defendant, to pay the note. The Holbrook obligation was the sole property of H. M. Dearth, and according to the award, with that alone the note was paid. It follows that William B. Spencer had no right or interest in the note or its possession. And on such a state of facts the action should be in the name of Hiram M. Dearth alone. See *Pierce* v. *Gilson*, 9 Vt., 221 ; *Parke* v. *McDaniels*, 37 Vt., 594.

The use of this note by the defendant, in suing Spencer on it in New Hampshire, was no conversion of it, as against him alone, and gives him no right to maintain trover ; much less was there any conversion as against Spencer and Dearth jointly.

*George N. Dale*, for the plaintiffs.

The opinion of the court was delivered by

WILSON, J. This is an action of trover for a promissory note, dated November 7, 1856, signed by the plaintiffs, in and by which they jointly and severally promised to pay the defendant $35.00. The case states that the plaintiffs claimed, on the trial in the county court, and that it appeared from their testimony, that the note sued for was paid by the plaintiff, Dearth, to the defendant, by a note against one Holbrook ; that the defendant agreed, at the time of the alleged payment, to deliver the note to the plaintiff, Spencer, and that some time after the payment, the said Spencer and the defendant submitted all matters of difference existing between them to the arbitrament and award of arbitrators ; that the defendant presented said note before the arbitrators, as a claim against said Spencer, and that the arbitrators found and awarded that the note had been paid by the plaintiff Dearth as above stated.

The defendant offered to prove, 1st, that the Holbrook note was never taken by him in payment of the note in suit ; and 2d, that nothing had ever been paid by either of the plaintiffs or any one else upon said note. This testimony was excluded by the court

below, that court holding the award conclusive on the question of payment. The first question in the case is whether Hiram M. Dearth, and said Wm. B. Spencer, may join as plaintiffs in the suit. It is objected by the defendant's counsel that as the plaintiff Spencer was only a surety upon the note, the suit should be in the name of Hiram M. Dearth alone. But we think this constitutes no valid objection to the suit in their names jointly. As between the plaintiffs, Spencer stands in the relation of surety, but the plaintiffs both stand in the same relation to the defendant, *namely*, that of joint and several promissors. The note in the hands of the defendant is *prima facie* evidence of a sum of money due to him, from both plaintiffs. Both plaintiffs are interested to get up the note ; to have it in possession, or in possession of one of them, or have it cancelled when the same has been paid, either as evidence of having made the payment, or to suppress an evidence of their indebtedness which ought not to exist after payment had been made. In this Spencer is as much interested as the plaintiff Dearth, and jointly interested with him.

2. It is insisted by the defendant that it is a matter of dispute and doubt from the evidence, whether Hiram M. Dearth is not still liable to pay the note, and upon this ground the defendant claims the action of trover will not lie. In support of this objection the defendant relies on remarks made by the late Ch. J. WILLIAMS in *Pierce* v. *Gilson*, 9 Vt., 216. That case was an action of trover brought by the maker of a note against the payee for refusing to surrender the note which the maker claimed he had paid and was entitled to have surrendered up to him. The court recognized the propriety of the action of trover in such a case, as being settled by authority ; but Judge WILLIAMS, who delivered the opinion, says : " The action should be permitted only where not only the evidence of payment is unequivocal, but also where it was understood by both parties. As long as that subject is in dispute and while the holder of the note claims it is not fully paid, he has a right to retain the note as evidence of indebtedness." He adds, " If at the time the plaintiff paid the note as he contends, the defendant insisted that something further was due, although he may have been mistaken as to that fact, he could safely

insist upon retaining the same until the question of payment was settled." In *Gleason* v. *Owen*, 35 Vt., 590, POLAND, Ch. J., in commenting upon the suggestions of Judge WILLIAMS in the case of *Pierce* v. *Gilson*, says : " It seems to us that there must be very great practical difficulty in carrying out this suggestion, and holding that trover will lie to recover damages for refusing to deliver up a paid note in some cases and not in others, depending upon the particular circumstances of how the dispute arose between the parties in relation to the fact of payment. It is hardly conceivable that such an action could ever be brought, except where the payee denied the fact of payment, and if the action would only lie where payment was conceded by the payee, there would be no occasion for bringing the action at all." It may be true that some of the suggestions of Judge WILLIAMS in that opinion are open to the criticism by Judge POLAND, in *Gleason* v. *Owen*, but in view of the facts in the case of *Pierce* v. *Gilson*, and the concurrence of Judge WILLIAMS in the decision of the case, it seems to us that the idea conveyed, or intended to be conveyed, by him is, that if, at the time of the alleged payment the payee then insisted that something further was due on the note, he could safely insist upon retaining the same. But no such point was raised by the evidence, and his remarks in relation thereto were unnecessary in deciding the case. It being settled law in this State, that the action of trover will lie to recover damages for refusing to deliver up a paid note, it must follow that the question of payment can be litigated in this form of action. It is undoubtedly true that the action of trover ought not to be resorted to in such cases, only where the evidence of payment is unequivocal ; but in the trial and determination of the question whether the note had been paid, the rules as to the admissibility, weight, and sufficiency of the evidence of such payment are the same in this action as in the trial of the same issue in any other form of action. It is for the triers to determine from the evidence whether the note had been fully paid or not, except in those cases where the party is, by a former adjudication of the subject of payment, estopped from litigating the same matter in another suit.

3. This leads us to consider whether the testimony offered by

the defendant was properly excluded by the court below. It is conceded by the defendant that the award is conclusive as between him and the plaintiff Spencer; but the defendant insists that it is not conclusive or even *prima facie* evidence as between him and the plaintiff Dearth, and it is upon this ground he claims that the county court erred in excluding said testimony. As between the defendant and the plaintiff Spencer, the award is as conclusive, on the matter included in the submission, as a judgment would be upon the same; and in determining the question whether the award is conclusive or *prima facie* evidence as to the plaintiff Dearth, it should have under the circumstances all the effect of a judgment. That matters which have been once determined by judicial authority cannot be again drawn into controversy, as between the parties and privies to the determination, is a principle too well settled to need the citation of authority. A judgment in one suit will be conclusive in every other where the cause of acttion and the parties are the same, notwithstanding a change in the form in which the action is brought. It is also a universal rule that a judgment concludes the parties only as to the grounds covered by it and the facts necessary to uphold it. It is laid down as a general rule, in Phillips on Evidence, page 526–7, that a verdict or judgment is not evidence for a stranger against one who was a party to the former suit. It is said there that no record of conviction or verdict can be given in evidence, but such whereof the benefit may be mutual, that is, such as might have been given in evidence by the plaintiff or defendant, and that nobody can take benefit by a verdict who had not been prejudiced by it, had it gone contrary. Among the exceptions to the general rule of the common law, which requires that verdicts or judgments should be admitted in evidence only between the original parties to the suit, or their privies, are questions of custom or toll; special verdicts between other parties finding a pedigree; orders of removal executed and not appealed from, and judgments *in rem.*

By the civil law the case of principal and surety is not within the rule of *res inter alios acta;* and if the creditor recover against the principal, he may use the judgment to conclude the surety. At common law a different doctrine prevails; accordingly the de-

cisions which follow the common law rule, hold that a recovery against the principal alone does not conclude the surety. A verdict or judgment is offered either to establish the mere fact of its own rendition, and those legal consequences which result from the fact, or is offered with a view to a collateral purpose; that is, to prove not only the fact that such a verdict has been rendered, or such judgment pronounced, and so let in all the necessary and legal consequences, but as a medium of proving some fact as found by the verdict, or upon whose supposed existence the judgment is based. For the first of these purposes, that is for establishing the fact that such a verdict has been given, or such a judgment pronounced, and all the consequences of such a judgment, the judgment itself is invariably not only admissible as the proper legal evidence, but usually conclusive to prove that fact. The mere fact that such a judgment was given can never be considered as *res inter alios acta*, neither can the legal consequences of such a judgment be so considered. But with reference to any fact upon whose supposed existence the judgment is founded, the proceeding may or may not be *res inter alios*, and consequently may or may not be evidence, according to circumstances, considering the nature of the facts themselves and the parties. 2 Starkie's Evidence, 183-4. The principle will be found to run through nearly all the American cases, that the judgment of a court of competent jurisdiction directly upon a particular point is, as between the parties, conclusive in relation to such point, though the purpose and subject matter of the two suits be different; hence a judgment may not only be evidence, but conclusive evidence, in relation to such point, and still be no bar, strictly and technically speaking, to a second action. The doctrine as laid down in *Baring* v. *Fanning*, 1 Paine, 549, seems to demand strict identity of parties, in order that the judgment may operate as a bar to a second action involving the same point. But in general, courts will look and ascertain who are the real parties, and give effect to the former suit accordingly. Upon this principle, the equitable assignee of a chose in action has been held estopped by a verdict and judgment thereon, in the same manner as if he were a party to the record, the suit having been prosecuted in the name of another, for his

14

benefit and at his request. *Rogers* v. *Haines*, 3 Green. Rep., 362. Some of the cases, that profess to follow the common law rule, make it depend upon what is the true meaning of the engagement which gives rise to the question. They say, if the engagement be merely that a particular thing shall be done or omitted by the principal, a judicial decision in a proceeding against him will avail nothing towards establishing the existence of the default on which it is founded, in a subsequent suit against the surety or guarantor. But the same cases maintain the doctrine, that when the engagement is virtually, or in terms, to be answerable, not merely or directly for acts *in pais*, but for their legal consequences, as ascertained in the course of subsequent legal proceedings, then the result of one action will be conclusive in the other. Ordinarily, where a party has a right of recovery over, secured to him either by operation of law or express contract, and he has given the person so responsible due notice of the suit, the judgment, if obtained without fraud or collusion, will be conclusive evidence for him against such person, upon every fact established by it. The latter, then, cannot be viewed in the light of a mere stranger, but has the same means of controverting the adverse claim as though he were the nominal and real party on the record. It is decided in *Douglas* v. *Howland*, 24 Wendell, 35, and in *Jackson* v. *Griswold*, 4 Hill, 522, that the relation which subsists between a principal and surety, or principal and guarantor, does not render either of them privy to a suit brought against the other. It has, notwithstanding, been held in a number of the more recent decisions, that an engagement by one man to be responsible for another, creates such a privity between them as to render a recovery against the latter, *prima facie* evidence in a suit brought on the guaranty given by the former. *The City of Lowell* v. *Parker*, 10 Met., 309 ; *McLaughlin* v. *The Bank of Potomac*, 7 Howard, 220 ; *Drummond* v. *Prestman*, 12 Wheaton, 515 ; *Berger* v. *Williams*, 4 McLean, 577 ; *Jacobs* v. *Hill*, 2 Leigh, 393 ; *Bryant* v. *Pye*, 1 Kelly, 355, and *Bradwell* v. *Spencer*, 16 Georgia, 578. These cases deviate, to a greater or less extent, from the common law rule adhered to in *Douglas* v. *Howland*. In *The City of Lowell* v. *Parker*, the court permitted the

judgment in an action of trespass against a constable to be given in evidence in a subsequent suit against the sureties in his official bond, for the purpose of proving the illegality of the levy and sale, which constituted the cause of action. In that case the court say : " It is objected that the judgment was not admissible because the sureties were not notified, and therefore it was *res inter alios*. But we think this objection cannot be supported under the circumstances of this case. When one is responsible by force of law, or by contract, for the faithful performance of the duty of another, a judgment against that other for a failure in the performance of such duty, if not collusive, is *prima facie* evidence in a suit against the party so responsible for that other. If it can be made to appear that such judgment was obtained by fraud or collusion, it will be wholly set aside ; but otherwise it is *prima facie* evidence, to stand until impeached or controlled, in whole or in part, by countervailing proofs." In *McLaughlin* v. *The Bank of Potomac*, it was objected that a judgment against the administrator of the endorser of a promissory note was no evidence against the surety of the administrator, but the court held the judgment was evidence of the existence of the debt against such surety and the fraudulent grantee of the premises. The more recent course of decision in Pennsylvania goes still further, and treats a recovery against a principal, in the official bonds taken in that State for the performance of public duties, as conclusive in a subsequent suit against his sureties. *Maser* v. *Strickland*, 17 S. & R., 354 ; *Evans* v. *The Commonwealth*, 8 Watts, 398 ; *Garber* v. *The Commonwealth*, 7 Bar., 265. It must be conceded that the effect of these cases is to make the contract of the sureties in such instances like that of bail : an agreement to be answerable for whatever shall be recovered against the principal. In *Mayer* v. *Foulkrod*, 4 Wash. Circuit Court Reports, 503, a bill was filed to compel the defendant to pay to the plaintiff a sum of money which the defendant's intestate had been compelled to pay to another. It did not appear that the plaintiff in the bill was a party, or in any way participated, directly by himself, or others, in the former suit ; and yet it was held that the first suit, having been defended in good faith before a court of competent

jurisdiction, was a bar to the second. This case, it would seem, was put upon the ground of an express or implied countenance of the first suit by the plaintiff in the second. In *Warner & Co.* v. *McGary*, 4 Vt., 507, it appeared that McGary had sold and assigned the note to the plaintiff, who had commenced an action on it in the name of McGary against John Turner, whose name appeared on the note as one of the signers. Turner defended the suit on the ground that he signed the note as witness and not as surety. McGary was notified of the suit against Turner, but took no measures to obtain testimony to prove the signature, nor gave the plaintiffs any information where evidence could be procured, and on account of the defense set up by Turner, the plaintiffs consented to a nonsuit. The court held that the defendant, having received notice of the first suit, and having neglected to furnish evidence, immediately became liable to the plaintiffs when they entered the non suit, and the judgment of non suit was held conclusive against the defendant in the second action. In *Walker* v. *Ferrin*, 4 Vt., 523, it appeared that the defendant had sold to the plaintiff a note, warranting that the maker had nothing which could be pleaded in offset thereto. The plaintiff had sued the note and was prevented from recovering by an offset pleaded and allowed. The action was brought to recover for the fraudulent representation with regard to the offset, and the court held that the prior judgment on the note was not only *prima facie*, but conclusive, evidence of the existence of the claims allowed in offset, the defendant having been present at the trial and assisted the plaintiff in contesting the offset. In delivering the opinion of the court in that case, PHELPS, J., says : " The representation set forth in the declaration relates to the collectability of the note, and was, substantially, that there was no claim in offset to defeat a recovery on it. This being the case, a recovery in the suit on the note would have satisfied the representation and been decisive of the (then) present controversy. On the other hand the judgment for the defendant in the former suit goes to establish the fact that the plaintiff failed to collect the note, which is essential to his recovery here. The record further shows that failure to have been occasioned by means of an account pleaded in offset by Bruce, an-

other fact equally essential to the right of recovery. Thus far the proceedings in relation to the note are to be regarded as mere matter *in pais*, material to the issue, and to be proved, as is admitted on all hands, by the only proper evidence—the record of those proceedings." It would seem from the facts of that case and the doctrine announced by it, that the voluntary appearance of Ferrin, at the trial in the former suit, and his assisting in resisting the offset, was held to have the same effect to conclude him in the second action, as is given to regular notice of the former suit, which is opposed to the doctrine of some of the earlier cases in other states.

The case of *Parkhurst* v. *Sumner*, 23 Vt., 538, was a suit upon a recognizance entered into by the defendant in an action in favor of one Sisco against said Parkhurst, in which judgment was rendered for Parkhurst to recover his costs. The defendant pleaded two pleas in bar, one alleging that the judgment in the principal action was entered up by collusion between the original parties, with a view to defraud the bail. The court decided that as the alleged fraud was not urged in the original action as a reason why the judgment in that case should not be rendered, and that in the suit upon the recognizance was the first opportunity the bail had to present the matter alleged-in that plea, he was not estopped by the former judgment from making such defense. The other plea in bar alleged that the original plaintiff was induced to consent to the judgment for costs against him, when in a state of intoxication procured by the plaintiff. As to this plea, it appeared that the question, whether the defendant in the original action was to have judgment for his costs, had been heard and decided in that suit. The court say, " The subject matter of this latter plea is no doubt concluded by the judgment, both as to the principal and bail. It is a universal rule in regard to judgments, that all matters which have been urged by the party before the adjudication, are concluded by the judgment as to the principal parties and all *privies* in interest or estate ; among privies, are no doubt included bail. " In that case the bail had no notice of the proposed hearing upon the question of costs. It would

seem that the doctrine of the more recent cases, above referred to, is, that the relation between joint and several contractors, whether they stand in the position of principal and surety, or are both principals, creates such privity between them, that a judgment for or against one of them, founded on the merits and not on technical grounds, and obtained without fraud or collusion, is evidence for or against the other in a subsequent suit involving the matters adjudicated in the former action. And where the defendant in the second action had notice of the former suit and an opportunity to make defense; or where the defendant in the second action voluntarily appeared and assisted in the former proceedings; or in case of payment made by a co-contractor who is a party of record in the second, but was not in the former action, or a release to him of the whole cause of action; or accord and satisfaction, where either of such matters is presented in the former action, by the party therein, and urged for himself and through his agency for, and on behalf of another party not on the record, but having a direct interest arising from express contract or by operation of law, to prosecute or defend the suit, and the same is prosecuted or defended with his express or implied countenance, such judgment is conclusive evidence in the second suit, of the matters so adjudicated in the former action. And some of those cases decide that such judgment may be *prima facie* evidence of the facts on which it is based, even though the party so interested had no notice of and took no part in the trial of the former action in which such judgment was rendered. The case of *Calvin P. Austin* v. *The Estate of Lester Hall*, from Chittenden Co., (not reported,) was heard and decided by the supreme court, Vt., at the general term, Nov. 1863, upon the following *case stated:*

"The parties to this action mutually agree and stipulate that judgment shall be rendered therein for the plaintiff or defendant upon the first and second counts of the declaration, as the court shall be of the opinion on the following case. The plaintiff was, at its maturity, and has since been, and still is the holder, in the regular course of business, of the promissory note of which the following is a copy:—' $1100. One year from date for value

received, I promise to pay to the order of L. G. Bingham, at the Commercial Bank Burlington, eleven hundred dollars.

A. L. BINGHAM.

WILLIAM MILLER.

Cornwall, Vt., Jan. 1, 1850.'

" Which note was endorsed to the plaintiffs as follows : ' L. G. Bingham, Lester Hall.' The said L. G. Bingham being the payee and said Hall the intestate endorser. Said Hall was an accommodation endorser for said Bingham, and never received any consideration whatever for his said endorsement. Said note was duly protested for non-payment, and said Hall duly notified thereof ; and the plaintiff is entitled to recover the amount thereof in this action unless the following facts make, in behalf of the defendant, a legal bar to such recovery. Prior to the June term, 1858, of Addison county court, the plaintiff brought an action on said note against William Miller and Alonzo L. Bingham, the makers thereof, which action, at said June term of said court, came to a trial by jury therein, upon the defense of payment claimed to have been made by said maker Bingham to said Austin before the commencement of said suit, and of this appeal ; the plaintiff denying that any payment had been made on said note, and claiming that the whole amount thereof was due ; and upon said trial the jury found a verdict for the plaintiff for eighty-one cents damages and no more, upon the ground (if it be legally admissible in this action to prove said ground by parol) that said Bingham had paid the residue of said note to the plaintiff, before the commencement of that suit on which verdict a judgment was rendered for the plaintiff, by said court, for eighty-one cents damages and costs, and said judgment was paid. Said verdict and judgment were rendered pending this action. If said verdict and judgment and the payment of said judgment are a legal bar to the further prosecution of this action, then the plaintiff is to have judgment in this action for nominal damages and proper costs, or there is to be a judgment for defendant, as the court shall be of opinion is according to law. Otherwise, there is to be judgment for the plaintiff for the amount of said note and interest, (less the amount of said verdict,) and costs, either party to be at liberty to except.".

The county court rendered judgment *pro forma* that the plaintiff recover the amount of the note against Hall's estate; but the supreme court held that the facts set forth in the *case stated*, constituted a legal bar to the further prosecution of the action and reversed the judgment of the court below. That case decides that where the amount due upon a promissory note has upon defense of payment made to the plaintiff, been determined in an action, in favor of the payee or endorsee against the maker, an endorser of the note, though not a party of record in the former action and having had no notice of it prior to the rendition of judgment, may, in a subsequent suit in the name of the same plaintiff against such endorser, plead the judgment in the former action as showing the amount due on the note upon which the judgment was rendered; that the judgment therein will be conclusive as to the plaintiff, in respect to the question so adjudicated, and that parol evidence is admissible to prove the ground on which the former judgment was based. The legal corollary from that decision is that, where it has been determined in an action against one of two or more joint and several promissors that the note or other claim had been paid in full, such adjudication and judgment will constitute a full defense to a subsequent suit, brought on the same claim, against the other promissor, guarantor, or surety, and be conclusive as against any one who was a party of record in the former action, though the party in the second suit, pleading the former recovery in bar, was not a party of record in the former action and had no notice of it before rendition of judgment therein, and for want of such notice might not have been bound, had the judgment been the other way. To illustrate the mischievous consequences which might result from the rule which excludes such evidence as to the existence of the facts on which such judgment is founded, we may suppose a joint and several note to have been executed by six persons. An action is commenced against A., one of the signers, who defends and prevails in his defense on the ground that the note had been paid in full, by B., another signer of the note. An action is then commenced against B. who defends and prevails in his defense, on the ground that he paid the note. The holder of the note then institutes a suit against each of the other four sign-

ers separately, who respectively defend on the ground that B. paid the note, and on that ground three of them also prevail in their defense, but owing to mere chance, or the death of a witness, and the rule excluding the former judgments and each of them as evidence, the plaintiff prevails in the last suit.  The plaintiff has now had the advantages and chances of six trials ; each signer of the note has had one trial, and there have been six judgments upon the identical subject matter, namely, upon the defense of payment of the note in full by B. before the first suit was brought ; five of the judgments against the plaintiff, and one in his favor ; neither of them was on grounds personal to either defendant, but each and all were upon the merits of the claim, in view of a defense which was common to all the signers of the note.  By these proceedings and their respective results, the signer of the note, against whom judgment was rendered, is thereby placed in a situation where it would be decided either that he had no right of action against the other signers, for contribution, or that the determination of the question of payment in their favor in the former suits was of no account, and allow them to be charged by an indirect proceeding, after they had been discharged from all direct liability.  It is plain, I think, that such judgments in their favor, if obtained without fraud or collusion, would discharge them from the debt indicated by the note ; by reason of which and as the consequences of applying the rule of strict mutuality of parties to a judgment as an estoppel, judgment is rendered against one of the signers, and he is without remedy against either of the others.

Now upon what principle or reason can the application of a rule stand, where it gives one of the parties such extraordinary advantage over the other, as in the case above supposed ?  It is said that estoppels should be mutual, but it is shown by the authorities above cited that the rule of strict mutuality of parties is not universal.  The rule is a technicality and it should not be applied where it cannot stand upon sound reason.  In Phillips' Evidence, 327, the reason given why a verdict or judgment is not evidence against a person who was neither a party to the former suit, nor claims under one of the parties, is, because he had no opportu-

nity of calling witnesses, or of cross-examining those on the other side, nor of appealing against the judgment. In the case above supposed, we will assume that neither of the makers of the note was a party to the suit against either of the others, either of record or in effect, by being cited in, or by actually assuming the defense. Upon this assumption and for the reasons before stated, it seems to me that one of the makers of the note, in a suit against him, should not be estopped by the judgment against another maker of the same note whose defense was payment, from proving the note was paid before that judgment was obtained. In such subsequent action the defendant might well insist under the circumstances that, as against a party of record who sought to use such judgment as conclusive against the defense of payment interposed by one not a party to the former adjudication, the rule of strict mutuality should apply. Upon this point, however, the court express no opinion.

We have now to consider whether strict mutuality of parties is essential to an estoppel, in a suit against one of the makers of a joint and several note, upon which, in a former action against another maker thereof, upon the defense of payment, final judgment was, on that ground, rendered against the plaintiff of record. It is said that the reason why a verdict or judgment would not be evidence for a stranger, even against a party who was engaged and failed in the former suit, seems to be because, if he had been party to that suit, instead of the person who gained the verdict, the result might have been different; for as the parties would in that case have been constituted differently, the evidence might have varied; part of the evidence might then have appeared inadmissible, or of a doubtful character, or perhaps other evidence might have been produced by the party who lost the verdict. Phillips' Ev., 327. This reasoning rests upon a real or supposed embarrassment of the party who failed in the former suit, arising, it is said, from the manner in which the parties were constituted in the former proceeding, and the common law rule of evidence applicable to such a case. And it rests on the further assumption, that one maker of a note stands in the light of a mere stranger to a judgment in favor of another maker of the same

note, where he prevailed upon the defense of payment. But so far as this reason relates to the manner in which the parties are constituted, it must fail, even under the common law rule, where the party claiming the benefit of the judgment had not been instrumental in procuring it ; and under the statute rule of evidence in this State, the reasoning in support of the common law rule can have no application, for the parties, as well as other interested persons, are competent witnesses.

The assumption that one of the makers of a joint and several note is a stranger merely to a judgment in favor of another maker of the same note, in an action upon it, where the judgment was rendered upon the defense of payment in full, is contrary to the legal effect of their relation. This assumption treats the engagement of joint and several promissors as several and independent contracts, and the promissors as liable to no common duty, and as having no common rights or interests in regard to payment of the note or defense against it when payment had been made. This is not the nature of their engagement nor the relation created by it ; but each signer of a joint and several promissory note undertakes for himself and as surety for the other signers, to pay the note according to its tenor. When one of the signers has paid the note in full, or made payment on it, such payment is, as between the makers and payee, regarded as payment made by all the makers ; it constitutes a defense to the claim, common to all the promissors. If action be brought against one of them, and the defense of payment is interposed, and it prevails, and judgment is rendered against the plaintiff on the ground that the note was paid in full before the commencement of the suit, the plaintiff, by such adjudication, has had his day in court. The question of payment determined against him was not only a full defense for the promissor against whom that suit was instituted, but also a full discharge for the other makers, from the debt indicated by the note, and the judgment, as conclusive evidence of such payment, could not be excluded in a subsequent action against a maker of the note, though not a party of record to the former adjudication, without unjust discrimination as to the re-

spective rights and remedy of the parties in the prosecution and defense of suit or suits upon such a contract.

The policy and spirit of our laws require not only that causes shall be tried and the rights of the parties settled as speedily as may be consistent with the due administration of justice, but that the opportunity to prosecute and defend shall be equal. To this end, and for the furtherance of justice, provision is made by statute allowing the parties in all civil suits, and other persons, irrespective of interest, to testify therein. The statute upon this subject not only allows a party or other person to testify, irrespective of interest, but it also gives either party the right to compel the adverse party, or any other person, though interested in the result of the suit, to testify to any material facts within his knowledge; hence the fact that a person interested in the result of a suit is not a party of record, cannot deprive either party of the benefit of his testimony. This provision was soon followed by repeal of the law allowing review of civil actions, by which the parties are confined to a single trial and judgment upon questions of fact relating to the merits of the action, leaving the defeated party, in case of surprise or newly discovered evidence, to petition for a new trial. By these provisions, the opportunity for the prosecution and defense of suits is equal, so far as it can be secured by legislation. It is true that the owner of a joint and several promissory note may, at his election, sue the makers jointly, or bring a suit against each separately, and proceed in the same to final judgment or judgments against them, or each of them, if anything be due on the claim. But there is nothing in the nature of such contract, nor in the defense of payment, or other defense to the merits of the claim, constituting a defense for all the makers of the note, nor in the law applicable to the contract, or remedy upon it, that could prevent as full and impartial development of the facts on trial of the merits of such issue, or the adjudication of the same, in a suit against one of the makers of such note, as if the suit had been instituted against all of them. In either case, if the defense be one that admits a cause of action once existed, but is in discharge of it, the statute requires that

such matter of defense shall be presented by plea or notice, filed agreeably to rule of court, by which the plaintiff would be informed as to the nature of the defense. Nor would he be required to proceed to trial until he had had reasonable opportunity to procure testimony, if any could be found, to resist the defense, whether it be the testimony of one of the makers of the note, not joined as a party, or that of any other witness; and if he could not procure testimony in season for trial, he might at any time before trial had commenced, enter a non-suit, or even after that and before judgment or verdict, the court might, for good cause, allow the plaintiff to become non-suit. All this the plaintiff could have the benefit of, as the circumstances might require, whether his suit be against part or against all the makers of the note. And if he proceed to trial and final judgment in a suit against one or more of the makers of the note and not against all, upon the defense of payment, or other defense to the merits, that would discharge the claim as to all the promissors, we may assume, until it be shown that he has just cause for a new trial in the same action, that he has had such a trial and adjudication of the matters involved as the law contemplates, co-extensive with the rights accorded to the party against whom he sought to enforce the claim. In such trial and adjudication upon matter of defense to the whole merits of the plaintiff's claim, such as payment of the note in full, and final judgment is against the plaintiff, such judgment is not on grounds personal to the maker of the note the plaintiff had elected to sue, but it is also in effect on the ground that he has no cause of action against the other makers of the note or either of them. And if such judgment be not held as conclusive evidence against the plaintiff, in a subsequent suit against the other maker or makers of the note where the identical matter adjudicated in the former suit is involved in the latter, it would follow that the payee or endorsee of such note could have as many opportunities to litigate such matter as there were makers of the note, and in all this the latter would have but one opportunity to make defense, for they all constitute only one of the contracting parties. This objection is not obviated by the fact that in separate suits, each maker of the note, in the suit against him, has his day in court and the ben-

efit of a trial.   A rule that would not allow a judgment in favor of one of the makers of the note, upon such defense, as a legal bar to a recovery against another maker of the same note, would compel each maker of the note, in a suit subsequently tried against him, to litigate the same question or questions which had been adjudicated in the former suit or suits, irrespective of the former adjudication or its result, by which the plaintiff would have had the advantage of two or more trials in different suits, but of the same matter, and if he should finally prevail against one of such makers he would have had only one trial and judgment upon the matters involved. · Besides this, he may, by reason of the former adjudication and its result, have lost his security and remedy for contribution.   The payee could not justly claim that there be allowed more than one legal trial and judgment upon the merits in the suit between him and the same maker of the note.   Yet, if such trial result in judgment against the plaintiff, on the ground that the note had been paid in full, or other full defense to any action that might be brought upon the note, to allow him to proceed and litigate the same subject matter, with the same maker of the note, until one of the parties should have obtained a majority of all the judgments that could be rendered in a number of suits equal to the whole number of makers of the note, or to allow review of the same action as before the repeal of that statute, would not be so absurd and unjust as to allow the same number of trials and judgments upon the same subject matter, in several suits against the promissors separately, after it had been once determined against the plaintiff.   For, in the former proceeding, the defendant would have had as many opportunities to defend as the plaintiff had to prosecute, while the latter would confine a maker of the note to a single trial and the judgment, if against him, would be final, but allow the payee, if he fail in that suit, on the ground that the note had been paid, or other defense to the whole merits of the claim, to litigate the same question or questions with each of the other makers separately, if such number of suits and trials should be necessary in order to enable the plaintiff to obtain a verdict. This would be wrong in principle and pernicious in its effects. We will concede the exercise of proper care and impartiality in

the discharge of duty by all the several panels of jury who sat or should sit in the trial of the same question in the respective suits; yet, by such repeated and persistent efforts on the part of the plaintiff to gain a verdict, he having the benefit of suggestions as to the weak points in his case disclosed on a former trial, and by change of testimony and additional testimony upon such points in the succeeding suit, might find a jury who thought he was entitled to a verdict. The probabilities that justice had been done by a verdict in his favor are no stronger than those in favor of a former verdict against him. If we concede that they are equal, yet the plaintiff could not, upon any principle of justice, reject the former verdict, because it is against him, and claim to hold the latter because it is in his favor, where both are based upon the same subject matter and it had been legally adjudicated in both cases. Besides the manifest injustice of such a rule in its application as between the payee and makers, we should also consider the embarrassment and irreparable injury which might result from it, affecting the rights and remedy of the latter as between themselves. There exists, as between the principal makers of such note, an express or implied agreement by each to indemnify the others, to the extent of his obligation arising from such relation, or to the extent of his interest in the contract. For this end, securities are sometimes deposited to satisfy the liability of each, or retained as a general fund from which it was expected payment of the note would be made. Whether such securities be furnished or not, the signers of the note are interested to close the matter between themselves when it could be done without prejudice to the rights of either. One of them may have paid the whole debt, and the others, relying upon the alleged fact of such payment and believing that no dispute would arise in relation thereto, may have contributed their respective shares and settled upon the supposition that the payee had received full payment. As to the fact whether the debt had been paid or not, the makers by their settlement between themselves, before obtaining possession of the note, would have taken the risk. But where, in a suit against one of the makers of the note, upon the defense of payment, it has on that ground been determined by judgment against the plaintiff,

such judgment should make it safe for all the makers of such note to treat it as fully paid as between each and all of them and the payee or plaintiff of record, and close the matter between themselves accordingly. But if strict mutuality of parties be regarded essential in order to give effect to a judgment as an estoppel, or as conclusive of the matter adjudicated as against a party to such adjudication, then the owner of such note, although he had commenced an action against one of the makers, and judgment was rendered against the plaintiff on the ground that the note had been paid, could delay suit or suits against the other maker or makers, until the statute of limitations had nearly run, which, in the case of a witnessed note, would be fourteen years, under our statute, from the time the cause of action accrued. This might make it necessary for the makers of the note, except the one who had obtained judgment on the ground the note had been paid, to retain securities, or if none had been given, to require security for the share of each, and hold the same until the payee had tried the same question with each signer of the note, or until the question of their liability had been determined in a proceeding between all of them and the payee or endorsee. In some cases the effect of such a rule would be to compel the makers of such note to perpetuate the testimony of payment, or institute a suit to recover damages for refusal to surrender up the note, and in such suit to prove, independent of the former adjudication, that the note had been paid, and this would give the payee of the note two trials upon the same subject matter, when he ought not to have had but one. I think it will be conceded, where one of the makers, in a suit against him, upon the defense of part payment or offset of a claim in his favor against the plaintiff, has reduced the amount of such note, another maker of it, in a subsequent suit against him, could legally claim that the plaintiff should be bound by the former adjudication, as showing the balance due upon the note at that time.

Such claim, being mutual as between the parties to the first suit, would not be so between those in the second, and for this reason the merits of it could not be litigated as an offset between the latter. This is one of the reasons for holding the former judg-

ment upon such matter conclusive. The claim is, by the former adjudication, merged in the judgment, and thereafter no action will lie upon it. Hence it would not do to say that the plaintiff, in a suit on the note against another maker, could collect of him that part of the note which had been satisfied by offset of the claim against the plaintiff. To allow him to do this, would allow him in the first suit, by offset to the note, to pay and satisfy a debt due from himself to one maker of the note; and in the second to collect the whole note of another maker thereof. It can make no difference that the claim in offset was, originally, a matter personal between the parties to the first suit, because, by its adjudication and offset, the effect is the same as if the defendant, in the first suit before its commencement, had made a payment from his own private funds to apply on the note, and the same had been allowed in assessing the damages. Upon the same principle, where judgment is rendered against the plaintiff in a suit in his favor against one of the makers of the note, and the ground on which the plaintiff failed to recover is that the note had been paid in full, or satisfied by offset of a claim due from the plaintiff to the defendant, such judgment should be regarded a legal bar to a recovery against either of the other makers of the note, though not a party to the former adjudication. To this extent, effect should be given to the judgment, in view of the privity existing between the promissors and in view of the fact of such payment or offset determined by the judgment. In such a case, after the question of payment, or other matter in full satisfaction of the note, has been once determined, by such judgment against the plaintiff, there can be no foundation for a suit against any other maker of the note. If a maker of the note, who was not a party to the former suit, would not, for that reason or other reasons, be bound by the judgment if it had been the other way, there can be no good reason why the judgment should not be conclusive of the matter determined, as against the payee who was a party to the former adjudication. It would seem plain that, if the plaintiff Dearth, instead of Spencer, had been party of record to the arbitration, an award in his favor, on the ground the note had been paid, would constitute a full defense in a suit

16

upon the note against his surety Spencer. Where the debt has been paid or otherwise satisfied by the principal, the surety is discharged ; as to him, such matter is a defense which would always have been good in equity, and he should, in a suit at law against himself, be permitted to use the judgment in favor of his principal in the former action, as evidence to conclude the plaintiff as to the facts on which the former recovery was based.

Upon the facts of this case we are agreed that the award is conclusive evidence that the note was paid as claimed by the plaintiffs. That the defendant received the Holbrook note and that it was sufficient in amount to pay this note, no question appears to have been made, but the only question in dispute was, whether the defendant received that note in payment of the note in suit. This question was submitted by the defendant and the plaintiff Spencer, to the decision of arbitrators, who found and awarded that the defendant did take and accept the Holbrook note, in payment of this note, and that it was paid by that note. The award is as conclusive as a judgment would be upon the same subject matter, and of this the defendant has no reason to complain, for he voluntarily became a party to the submission, arbitration, and award. The fact of payment, found by the arbitrators and stated in their award, shows not only that the debt had been satisfied and discharged as between him and Spencer, the other party to the arbitration and one of the makers of the note, but also as between the defendant and the plaintiff Dearth, the other maker thereof. In view of these facts, the defendant can have no right of recovery on the note against any one, and so long as the award remains in force, it would be as unjust to allow the defendant to litigate the merits of the question of payment in a suit against the plaintiff Dearth, as to allow him another opportunity to try the same question with Spencer. We have no occasion to decide whether the plaintiff Dearth by his agent Rollin Spencer, or otherwise, so far countenanced the arbitration that he would be bound by the adjudication of the question of payment if the award had been the other way.

The result is, the judgment of the county court is affirmed.